## G. W. Limerick v. A. D. Lee.

(Filed September 5, 1906.)

1. **CONTRACTS—Part Performance—Quantum Meruit.** A party who has performed only a part of his side of a contract is not in all cases without a remedy, for, although he may have no remedy on the contract as originally made, the circumstances may be such that the law would imply a new contract and give him a remedy on a quantum meruit.

2. **SAME—Same.** Where the plaintiff entered into a contract with the defendant to furnish the necessary material to paint and paper his house, and was prevented from completing the contract by breach of defendant, who receives without complaint and accepts the benefits of what has been done, the plaintiff may recover according to contract price for what had been done; or where he is to receive a fixed sum for the whole work, then, in the proportion which the work done bears to the whole; or where there is no fixed price, then upon a quantum meruit.

3. **EVIDENCE—Admissions—Lien Statement.** A lien statement under oath and a cross petition filed in one case by a party, is competent evidence against such party on the trial of another case as statements or admissions, but are not conclusive, and carry nothing of estoppel in favor of a stranger to proceedings in which they were filed.

4. **PLEADING & PRACTICE—Petition May Be Amended, When, In** an action for material furnished and services rendered for the recovery of the contract price, it is proper to permit plaintiff to amend his petition, stating no new facts constituting a new cause of action, but seeking to recover the value of the material actually furnished and work performed upon a quantum meruit.

(Syllabus by the Court.)

*Error from the Probate Court of Oklahoma County; before William P. Harper, Probate Judge*

*Snyder & Clark,* for plaintiff in error.

*John S. Jenkins,* for defendant in error.

### STATEMENT OF FACTS.

The original petition of plaintiff below substantially alleges that on or about the 1st day of June 1901, T. H. Harvey, pursuant to contract, was building a dwelling house in Maywood Addition to Oklahoma City for the defendant, G. W. Limerick, and that the plaintiff entered into a contract with Harvey to furnish material and labor to paint and paper the house for $335.00, and that under that contract he performed five dollars ($5.00) worth of work, and that on or about June 25th, 1901, he learned that said Harvey was unable to pay for said labor and material, and refused to proceed any further under the terms of said contract; that on that day the defendant, G. W. Limerick, came to said building and entered into a verbal contract with the plaintiff whereby he agreed and promised to pay him the sum of $330.00 for furnishing material and labor to complete the painting and papering of said house, said amount to be due and payable upon its completion; and, that in pursuance thereof, he furnished material and labor, and completed said contract with Limerick on the 19th day of December, 1901; and that there became due and owing to him from the defendant upon that date the sum of $330.00.

In his amended petition the plaintiff repleaded his allegations in reference to his contract with Harvey, his refusal to proceed thereunder, and his contract with the defendant,

and negatived the allegation of the original petition that he had completed the contract, and as an excuse therefor, set up that the defendant failed to select the paper that was to be used in three of the rooms, and alleged that the material furnished, and labor performed under the contract with defendant, was worth $310.00, and for which sum he prayed judgment, with interest.

For his answer, the defendant below, entered a general denial, admitted that the plaintiff entered into a contract with Harvey to furnish the material and labor for the painting and papering of said house and set up that the plaintiff sought to enforce payment thereunder by filing a subcontractor's lien against the dwelling house; and thereafter, sought to foreclose the same, but because of defects therein, was compelled to dismiss his cross petition in that suit; and thereupon, brought this action against the defendant upon an entirely different contract from the one in which he had theretofore solemnly alleged to have furnished the material and performed the labor upon said house.

The issues thus joined were submitted to trial by jury, resulting in a verdict and judgment for the plaintiff below, in the sum of $380.10, being the amount claimed with interest.

A motion for new trial was overruled, exceptions saved, and case brought here by petition in error, and case made for review.

Opinion of the court by

Garber, J.: The plaintiff in error complains: First: that suit was filed on a contract in entirety, and that the petition was amended and judgment prayed for a smaller

amount on *quantum meruit*.    By the strict rules of the
common law, full performance was required as a condition
precedent to the right of recovery; but, the rigor of this rule
has been relaxed in many jurisdictions, and the trend of
modern decisions is to administer equitable relief rather
than to hold the parties to the very letter of their agreement.
In this case, however, the plaintiff below pleaded as an ex-
cuse for his failure of performance the refusal of defend-
ant to select paper for three of the rooms according to the
contract; and, under those circumstances, the plaintiff could
not be prevented from recovering in this case for material
furnished, and work performed. He can recover as upon a
*quantum meruit*.    Both the pleadings and the evidence were
sufficient for that purpose; the petition stated the facts con-
stituting plaintiff's cause of action, setting forth the con-
tract and materials furnished, the labor performed, and their
value.    The evidence shows that Lee complied with the con-
ditions and requirements of the contract, excepting in so
far as he was prevented from so doing by Limerick; and
that the latter made no objections at any time, but received
and accepted, without complaint, all the benefits accruing
from the services rendered, and materials furnished by Lee.
It is true, the defendant below set up in his answer and
cross-petition, a claim for damage for failure of perform-
ance, but offered no evidence in its support, and, to that ex-
tent, abandoned his pleading.

The leading case with reference to contracts for per-
sonal services sustaining recovery on *quantum meruit* is
*Britton v. Turner,* 6th N. H. 481; and the doctrine there
laid down is better adapted to do adequate justice to both
parties and wrong to neither, than those numerous cases

which rest upon the somewhat technical rule of the entirety of contract.

In *McClay v. Hedge,* 18 Iowa 66, Judge Dillon, speaking for the court, said:

"Referring to the doctrine laid down in *Britton v. Turner,* 6th N. H. 481; its principles have been gradually winning their way into professional and judicial favor. It is bottomed on justice, and is right upon principle, however, it may be upon the technical and more illiberal rules of the common law as found in the older cases."

In *Duncan v. Baker,* 21 Kan. 99, it was held:

"Where a contract is entire, and has been only partially fulfilled, the party in fault may nevertheless recover from the other party for the actual benefit received and retained by the other party less the damages sustained by the other party by reason of the partial non-fulfillment of the contract; and this may be done in all cases where the other party has received benefit from the partial fulfillment of the contract, whether he has so received the same and retained it from choice, or from the necessities of the case. *Barnwell v. Kempton,* 22 Kan. 317; *Quigley v. Sumner Co.* 24 Kan. 300; *Ryan v. Cranston,* 27 Kan. 672."

Mr. Parsons, in his work on Contracts, says:

"If one party, without the fault of the other, fails to perform his side of the contract in such manner as to enable him to sue upon it, still, if the other party has derived a benefit from the part performed, it would be unjust to allow him to retain that without paying anything. The law, therefore, generally implies a promise on his part to pay such a remuneration as the benefit conferred upon him is reasonably worth; and to recover that quantum of remuneration, an action of *indebitatus assumpsit* is maintainable." 2nd. Pars. Cont. (6th Edition) 523.

Mr. Field, in his work on Damages, says that:

"The doctrine now generally recognized in case of part performance of a contract for personal service is that if the employer accepts the benefit of what has been done, whether voluntarily or from the necessities of the case, the employe may recover according to contract price for what has been done; or, where he is to receive a fixed sum for the whole work, then, in the proportion which the work done bears to the whole work; or, where there is no price fixed, then upon a *quantum meruit;* from which, however, there must be deducted whatever damages may have resulted to the employer·from the failure to fully perform the contract by the employe." Field Dam. 327.

In *Duncan v. Baker, supra,* Mr. Justice Valentine said:

"Suppose that an owner of real estate employes a man to build or repair some structure thereon for a gross but definite sum, the owner of the real estate to furnish the materials, or a portion thereof, in case of building, and either to furnish them in case of repairing, and the job is only half finished; what choice has the owner of the real estate with reference to retaining or returning the proceeds of the workman's labor? This kind of supposition will also apply to all kinds of work done on real estate, and will often apply to work done on personal property. Of course, in all cases where the employer can refuse to accept the work and does refuse to accept it, or returns it, he is not bound to pay for it unless it exactly corresponds with the contract; but where he receives it and retains it, whether he retains it from choice or from necessity, he is bound to pay for the same what it is reasonably worth, less any damage that he may sustain by reason of the partial non-fulfillment of the contract. Of course, he is not bound to pay anything·unless the work is worth something, unless he received or may receive some actual benefit therefrom; and where he received or may receive some actual benefit therefrom, he is bound to

pay for such benefit (and only for such benefit), within the limitations hereinbefore mentioned." See Beach on Contracts paragraph 109, page 135; 9th Cyc. 686; 7th Encl. of Law, 152.

There was no abuse of discretion in granting leave to amend, setting up *quantum meruit*. There were no new facts stated upon which a new cause of action was based. The contract and the material furnished and services performed, and the amount claimed were the same in both the original and amended petitions. *Cox v. McLaughlin*, 76 Cal. 50, 18th Pac. 100.

The evidence shows that the defendant in error entered into a contract with Rice, Harvey & Rice, and becoming doubtful of their financial responsibility, with their consent, subsequently entered into a contract with plaintiff in error. On the 19th day of December, 1901, upon the advice of counsel, he filed a mechanic's lien against the property, the title of which was vested in Della Limerick, and on the 21st day of August, 1903, in an action in the district court of Oklahoma county, case No. 3239, *W. W. Storm v. W. W. Rice, et al.*, he filed his separate answer and cross-petition, which he subsequently dismissed without prejudice.

In both the lien statement, and cross-petition, Lee stated that he performed the labor and furnished the material in the painting and papering of Limerick's house "at the instance and request, and by verbal contract with the contractor, the defendant, T. H. Harvey," etc. It is now insisted that the defendant in error was bound by the solemn admissions made in his lien statement, and cross-petition, filed in the district court, and that he can not be heard to

controvert them, except by showing that they were made without his knowledge or authority.

In support of their position, counsel for plaintiff in error cite: *The Lane Implement Company v. Lowder.* 11th Okla. 61. In that case, the Lane Implement Company brought suit against L. R. Lowder on a promissory note before a justice of the peace, and counsel caused an attachment to issue and to be levied on certain property of defendant. On the same day, the defendant gave a forthcoming bond, with J. H. Manning as surety. Judgment was finally rendered for plaintiff, the attachment sustained, and the attached property ordered sold; but when the officer attempted to take the property under the order of sale, it could not be found. Suit was then brought on the forthcoming bond. The defendant answered, admitting the commencement of the original suit, the issuance of the order of attachment, the seizure of the property thereunder, the execution and delivery of the forthcoming bond, the return of the property to Lowder, the rendition and existence of the judgment as pleaded by plaintiff, and that the attached property had been ordered sold.

In his amended answer, the defendant entered a general denial, and set up that the forthcoming bond was given without consideration, in that the property attached was exempt under the laws of the territory.

Under the pleadings in the case, the court properly held that solemn admissions made by a party to an action in his pleadings should be regarded as admitted facts in the case, until there is a showing that they were made by mistake, either on the part of the pleader or his attorney, and that by the giving of the forthcoming bond, one is estopped from

denying that the property returned under it is the property of the party who gave the bond, or that the property was not subject to attachment.

In the case at bar, G. W. Limerick, plaintiff in error, was not a party, or privy, to the suit in the district court. He was not influenced or affected thereby; he was a total stranger to the entire proceeding; he was not bound in any way, and, ordinarily, one who is not bound by a judgment, can not avail himself of it in another proceeding. If Limerick did not act upon, or rely upon, the admissions of Lee in the Storm suit, how can he invoke the doctrine of estoppel here?

It is an essential principle of estoppel, that the conduct of the person has been influenced by the statements or conduct of another, and, because so influenced, he shall be protected, and the other estopped.

"With regard, then, to the conclusiveness of admissions, it is first to be considered, that the genius and policy of the law favor the investigation of truth by all expedient and convenient methods; and that the doctrine of estoppel, by which further investigation is precluded, being an exception to the general rule, founded on convenience, and for the prevention of fraud, is not to be extended beyond the reasons on which it is founded. It is also to be observed that estoppels bind only parties and privies, and not strangers. Hence, it follows, that though a stranger may often show matters in evidence, which parties or privies might have specially pleaded by way of estoppel, yet, in his case, it is only matter of evidence to be considered by the jury." Greenlief on Evidence (16th Edition) 1st vol. 204.

"Admissions or statements though appearing in judicial records estop the person making them from explaining or denying their truth only as against those who were parties

or who claim rights under such records or who acted upon or were influenced by such statements." *Dahlman v. Foster,* 55 Wis. 382, 13th N. W. 264.

In *Quinby v. Carhart, et al.,* 113 N. Y. 579, 30 N. E. 972; it was said:

"The fact that defendants brought a suit, to which plaintiff was not a party, against such third person, claiming that the sale was to him, and seeking to recover the price thereof, and gave evidence tending to show that the sale was directed to him, and not to plaintiff, did not conclude them afterwards claiming that the sale was to plaintiff, though it may have tended to discredit their testimony that they sold the plaintiff.

In *Murphy et al., v. Hindman,* 58 Kan. 184, 48 Pac. 850; the court held:

"If the record or judicial proceeding contains material declarations or admissions of a party to the same, it may be offered in evidence in behalf of one who was not a party; but it will not be conclusive against the party who made the declarations or admissions."

"A record of judicial proceeding is admissible in evidence in behalf of one not a party to it when it contains a declaration or admission made by the person against whom it is offered. In such circumstances it does not have the unimpeachable verity of a record. It is not conclusive against the person who made the admission or declaration, but such admission or declaration is of no higher dignity than if made in some other manner, and may be explained or rebutted." Freem. on Judgm. 417 "A"; see also Black on Judgments 608.

In *Solomon R. Co. v. Jones,* 30 Kan. 601, 2nd. Pac. 657, Brewer, J., said:

"While an allegation in a verified petition in another case is not estoppel and does not conclude the party making

it, it is competent evidence against him, just as a declaration or admission made by him in any other manner and place."

While the admissions of Lee in the lien statement and cross-petition in the Storm suit may have been inconsistent with the allegations of his petition in this case, they were not conclusive. The doctrine of the election of remedies or estoppel did not apply. He had entered into two contracts, first with Harvey, then with Limerick, and through advice of counsel, or mistake, or otherwise, he may have taken a false position in that action; and there is no rule of law prohibiting him from taking what he claims to be his true position in this. What he said and did in that action, however, bears upon his good faith and credibility in this. His admissions were properly admitted in evidence under proper instructions, and considered by the jury in connection with his explanation.

Under the pleadings in this case, and the theory upon which it was tried in the court below, the sole issue was: Did the plaitniff in error, Limerick, make a contract with defendant in error, Lee, in which he agreed to pay him for material furnished, and services rendered, in painting and papering his house? There is no contention, or, suggestion, in the record, that Limerick ever paid anyone for the material furnished, or services rendered, or that the material and work did not meet the requirements of the contract. On the contrary, Limerick admits and says by his conduct: Lee furnished the material, of good quality, papered and painted my house, in a good workmanlike manner, and I am receiving the benefits; but I refuse to pay him because he made his contract with Harvey, the contractor, as shown by

his admissions; and, while I did not pay Harvey, or any one else, for the material and labor, I never made a contract with Lee, and refuse to pay him.

The question of contract, however, was presented to the jury in special interrogatory number 12, which reads:

"Was any other contract between the plaintiff, Lee, and defendant, Limerick, with reference to the doing and performing of the work, or any part thereof, for which it is sought to recover in this action? If so state when it was made, and where, and what were the terms of said contracts?" And, that the jury did not agree with Limerick in his statement, viz: "That he never made a contract with Lee," is disclosed by their answer. "Yes, a verbal contract about June 20, 1901, at Limerick's house, to paper and paint as per specifications for the payment, by G. W. Limerick to A. D. Lee, of $335.00, less $5.00 for labor already done. Ed Ward, Foreman."

After hearing all the evidence in the case, the jury found that Limerick had entered into a contract with Lee in which he agreed to pay him for material and labor; and that finding of the jury is supported by the evidence of three witnesses, and denied only by the plaintiff in error.

And when controverted questions of fact are submitted to a jury, and the evidence adduced is conflicting and contradictory, but there is competent evidence reasonably tending to support every material allegation necessary to uphold the verdict, and the trial court approves the verdict, and renders judgment in accordance therewith, and a new trial is refused, this court will not disturb the verdict of the jury and the judgment of the court on the weight of such conflicting evidence.

We have searched the books in vain for an authority holding that an admission in a lien statement or cross-pe-

tition was a legal tender with which a stranger to the proceeding could pay for material furnished and services rendered, in painting and papering his house; and the total absence of such an authority, in more than a century of judicial growth, prolific of judicial decision upon the multitudinous phases and features of legal controversy, is a lasting tribute to our jurisprudence, as evidence of the substantial and ample protection it affords to laborer and artisan alike, as against technicality invoked to defeat the payment of an honest debt.

In this case, the law, and the equity will take the lien statement of Lee, properly framed, with its limitations, and hang it up over the mantel of Limerick, with the inscription: "The laborer is worthy of his hire."

A careful examination of the record failing to disclose reversible error, it will be unnecessary to consider the remaining questions raised; and the judgment of the trial court will be affirmed.

All the Justices concurring.