**KINGFISHER MILL & ELEV. CO. v. WEST-
BROOK et al.**

No. 9726—Opinion Filed July 20, 1920.

Rehearing Denied Sept. 14, 1920.

(Syllabus by the Court.)

**1. Contracts—Acceptance—Counterproposals.**

Where a person offers to do a definite
thing and the party to whom the offer is
made accepts conditionally, or introduces a
new and material term into the acceptance,
his answer constitutes a counterproposal and
there is no agreement; but when the party
to whom the counterproposal is made accepts
it, such counterproposal and acceptance con-
stitute a binding contract.

**2. Evidence—Parol Evidence Affecting Writ-
ings—Construction of Contract—Question
for Jury.**

Where a contract, evidenced by a telegram,
is ambiguous and its meaning is disputed,
evidence of extrinsic facts and circumstances
throwing light upon the intention of the part-
ies is admissible, and the construction of the
contract becomes a mixed question of law and
fact and is determinable by a jury under
proper instructions of the court.

**3. Same—Sale of Mill Products—Construc-
tion of Telegram—Opinion Evidence.**

Where a telegram from a milling company,
engaged in the sale of flour and feed, does not
contain any technical or code language, it is
not error for the trial court to refuse to per-
mit witnesses, other than the parties to the
action, engaged in the same line of business
as defendant to testify as to the meaning of
the words employed. In such circumstances,
under section 959, Rev. Laws 1910, the essen-
tial question is not in what sense mill men
would construe the telegram, but in what
sense the promisor believed at the time of
making the promise that the promisee under-
stood it.

**4. Pleading—Trial Amendments.**

Under section 4790, Rev. Laws 1910, the
trial court may, before or after judgment,
amend any pleading, process, or proceeding
by adding or striking out the name of any
party, or correcting a mistake in the name of
a party, or a mistake in any other respect, or
by inserting other allegations material to the
case, or conform the pleadings or proceedings
to the facts proved, when such amendment
does not change substantially the claim or
defense.

**5. Same—Petition—Breach of Contract—
Agency.**

Where plaintiffs alleged in their petition
that a certain brokerage company was the
agent of the plaintiffs, but during the trial
first ascertained that said brokerage company
was the agent of the defendant, and then
asked and were given leave to introduce testi-
mony to that effect, and the court properly
instructed the jury on the question of such
agency, it was not error for the court, after
the verdict was returned, but before judg-
ment, to permit the plaintiffs to amend their
petition to conform to the proof by alleging
said brokerage company was the defendant's
agent, since such amendment did not change
substantially plaintiffs' claim or demand;
their cause of action, as alleged in their orig-
inal petition, being for damages for alleged
breach of contract and such claim or demand
being exactly the same after the amendment.

**6. Sales—Breach of Contract—Measure of
Damages.**

The proper measure of damages for the
breach of a contract for the sale of personal
property is the difference between the contract
price and the market price at the time de-
livery should have been made under the con-
tract.

**7. Sales—Delivery—Time.**

Where a contract does not specify the time
of delivery, it must be made within a reason-
able time.

**8. Frauds, Statute of—Sale of Personalty
Evidenced by Telegram.**

A contract for the sale of personal prop-
erty exceeding $50 in value is not prohibited
by the statute of frauds where the same is
evidenced by a telegram signed by the party
to be charged.

Error from District Court, Kingfisher
County; James B. Cullison, Judge.

Action by H. B. Westbrook and J. E. West-
brook, partners, doing business as Westbrook
Brothers, against the Kingfisher Mill & Ele-
vator Company for damages for breach of a
sale contract. Judgment for plaintiffs, and
defendant brings error. Affirmed.

Boynton & Reilly, for plaintiff in error.

Welch & Welch and George L. Bowman,
for defendants in error.

RAINEY, C. J. H. B. Westbrook and J. E.
Westbrook, partners, doing business under
the firm name of Westbrook Brothers, ob-
tained a judgment in the district court of
Kingfisher county against the Kingfisher Mill
& Elevator Company in the sum of $400, to re-
verse which this proceeding in error was com-
menced.

Plaintiffs' action was for breach of con-
tract, the circumstances surrounding which
were as follows: On July 10, 1916, plaintiffs
were engaged as partners in the grocery and
feed business in Antlers, Oklahoma, and the
defendant was engaged in the milling, feed,
and flour manufacturing business in King-
fisher, Oklahoma. The Hugo Brokerage Com-
pany is a firm of brokers located in Hugo,
Oklahoma. On said date, Mr. H. B. West-

brook called the Hugo Brokerage Company over the telephone and informed it that he wanted to book 5 cars of flour from the Kingfisher Mill & Elevator Company at $2.55 per hundred pounds, and later in the day the brokerage company called over the telephone and informed him that the mill company would book three cars at $2.60 and the others at $2.55. As soon as Mr. Westbrook informed the brokerage company that he wanted the five cars of flour, said company telegraphed the Kingfisher Mill & Elevator Company as follows:

"Westbrook wants to book five cars mostly flour at two fifty-five. Bran one five, meal two, shorts twenty-five, price guaranteed, wire at once what to do, don't want let them get away. You know about the flour they have been handling and can tell about how long will have to carry."

In response to this telegram the mill and elevator company telegraphed the brokerage company as follows:

"Book Westbrook three cars of flour two sixty, others as stated."

The defendant shipped three cars of flour at $2.60, which were paid for by the plaintiffs, but refused to ship the other two cars, contending that it had sold the plaintiffs only three cars and that the words "others as stated" referred to other mill products, it being the custom at that time to sell mixed cars of flour, bran, shorts, and meal to merchants. The capacity of the average car was about 25,000 pounds and the division usually made was about 20,000 pounds of flour and the remainder in other products.

It developed at the trial that the defendant would not sell its products direct to merchants in the district where plaintiffs were located, but would sell only through the Hugo Brokerage Company, and that defendant paid said brokerage company for making sales for it. The plaintiffs had endeavored on a prior occasion to buy direct from the defendant, but were informed by the latter that it sold only through the brokerage company.

After an examination of the evidence in the record we have no doubt that said brokerage firm was defendant's agent and that as such agent it sold the plaintiffs five cars of flour; three at $2.60 and two at $2.55. It is unnecessary for us to here determine whether the brokerage firm, as agent of the defendant, could bind their principal to deliver five cars when such principal had only authorized its said agent to sell three cars, for the reason that defendant's telegram to the brokerage company is ambiguous. It is susceptible of the construction, as contended for by the defendant, that the words "others as stated" referred to other mill products, and it is also

susceptible of the construction, as contended by the plaintiffs, that said words referred to the other two cars. This latter construction is also the construction given the telegram by the brokerage company.

Defendant contends that there was no contract on the ground that the minds of the parties did not meet; that is, that the defendant did not accept the proposition made by the plaintiffs, and that their telegram merely constituted a new proposal, and cite in support thereof Hart-Parr Co. v. Brockreide, 77 Okla. 277. In the case cited it was held that where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is a mere expression of willingness to treat, or it is a counterproposal, and in neither case is there an agreement. The law thus stated is correct, but is not applicable to the case at bar, for the reason that defendant's counterproposal was accepted by the plaintiffs when they assented thereto and communicated their assent to the brokerage company as defendant's agent. Then the contract consisted entirely of defendant's counterproposal and plaintiffs' acceptance, upon which there was a meeting of the minds of the contracting parties; but the contract, as thus made, is ambiguous, and its meaning being in dispute, its construction became a mixed question of law and fact, and was determinable by the jury under proper instructions of the court. Rider v. Morgan, 31 Okla. 98, 119 Pac. 958. Under these circumstances it was proper for the court to admit in evidence the extrinsic facts and circumstances throwing light upon the intention of the parties, which, as has been held in a long line of authorities, must prevail over verbal inaccuracies, inapt expressions, and the dry words of the stipulation.

Counsel for defendant insist that the court committed reversible error in refusing to permit several of its witnesses to testify as to the meaning of the telegram. The court did permit the officers of the defendant company, and also the plaintiffs, to testify as to what they understood the telegram to mean, but refused to permit so-called expert witnesses, called by the defendant, to testify as to what they understood its meaning was. These so-called expert witnesses were experienced mill men, but there is no showing that the telegram contained any language on the disputed point that had any particular trade meaning. The message was not written in any code. On the other hand, the words employed were those in ordinary use in the English language. In offering this testimony counsel for defendant said: "We are trying to find out what those messages mean in the light of the language as it would be understood by those

who are engaged in that line of business. It does not have to be a code message in order to require that sort of testimony." The witnesses did not purport to be experts in the use and meaning of words, and did not qualify as such. Moreover, the essential question was not how other mill men would interpret the language of the telegram, but in what sense the promisor believed, at the time of making the promise, that the promisee understood it. Section 959, Rev. Laws 1910. It is not contended that the language was technical, so the plaintiffs were not bound to give it the interpretation that a mill man would have given it. In our opinion the nature of the case was such that it did not call for or require expert testimony to explain the meaning of the words used in the telegram.

This brings us to a consideration of the most serious contention in the case. Plaintiffs' petition, as originally filed, alleged they entered into the contract through the Hugo Brokerage Company without averring whose agent said brokerage company was. In response to a motion to make the petition more definite and certain in this particular, plaintiffs alleged that the brokerage company was the agent of the plaintiffs, but during the trial plaintiffs' counsel stated to the court that they had discovered that the brokerage company was the agent of the defendant, and asked leave to introduce testimony to that effect, which leave was granted over the objection of the defendant. The petition, however, was not amended in this respect until after the verdict was rendered, but before judgment, when the plaintiffs asked, and were given, leave by the court to amend their petition to conform to the proof by alleging that the brokerage company was defendant's agent. The court, however, in its instructions had already submitted the question of agency to the jury. Defendant contends that this was material and substantial error which changed the issues and was not permissible under section 4790, Rev. Laws 1910, which reads as follows:

"The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment."

In construing this section this court has repeatedly held that the amendment of pleadings, when not changing the cause of action, rests within the sound discretion of the trial court Alcorn et al. v. Dennis, 25 Okla. 135, 105 Pac. 1012; Swope v. Burnham, 6 Okla. 736, 52 Pac. 924; Armour Packing Company et al. v. Orrick, 4 Okla. 661, 46 Pac. 5i3; El Reno Electric Light & Tel. Co. v. Jennison, 5 Okla. 759, 50 Pac. 144; Lookabaugh v. La Vance, 6 Okla. 358, 49 Pac. 65; Limerick v. Lee, 17 Okla. 165, 87 Pac. 859; Lookabaugh v. Bowmaker, 21 Okla. 489, 96 Pac. 651; Mulhall v. Mulhall, 3 Okla. 304, 41 Pac. 109.

In Symms Grocer Co. v. Burnham, etc., Co., 6 Okla. 618, 52 Pac. 918, it was held that the amendment may be made, provided the action be still for the same demand. In Robinson & Co. v. Stiner, 26 Okla. 272, 109 Pac. 238, it was held that the amendment should be allowed where it does not change plaintiff's claim. In Limerick v. Lee, supra, it was held that the petition may be amended to permit recovery on quantum meruit, where originally brought on a contract.

Let us apply the rule announced by the Code and the above decisions to the instant case. Plaintiffs' cause of action, as alleged in the original petition, was for damages for an alleged breach of contract, and the claim or demand was exactly the same after the amendment. It was a matter of importance in establishing this claim or demand whether the brokerage company was plaintiffs' agent or defendant's agent, but the defendant was in no wise prejudiced, and had notice of plaintiffs' intended amendment during the trial and had ample opportunity to refute the evidence offered under the amended pleadings. In our opinion the court did not abuse its discretion in permitting the amendment, for it was in furtherance of justice.

The defendant contends that the proper measure of damages, if any, that should be assessed is the difference between the price of the two cars of flour under the contract and the market price at the time the defendant first communicated its intention to the plaintiffs not to comply therewith. The plaintiffs, on the other hand, contend that the proper measure of damages is the difference between the contract price of the flour and the market price at the time of delivery under the contract. Section 2852, Rev. Laws 1910, is the governing statute, and is as follows:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are

not clearly ascertainable in both their nature and origin."

It seems to be agreed that, since no time was specified, the flour was to be delivered within a reasonable time. From the evidence in the record, it reasonably appears that it was the intention of the parties that the flour was to be delivered from time to time as needed. In fact the three cars of flour were furnished as follows: The first on July 29, 1916; the second on August 23, 1916, and the third on September 15, 1916. There was evidence showing the market price of flour was $2.55 in July, and $4.80 in November. It is plaintiffs' contention that the other two cars of flour should have been delivered within a reasonable time after the first three, and under all the facts and circumstances in evidence we cannot say that the jury were not authorized to find that the time of delivery was either October or November. Based upon the November market, plaintiffs' recovery should have been for a larger amount than that awarded, but since it was also in evidence that the price of flour was constantly rising it seems that the jury gave the defendant the benefit of the doubt as to the time of delivery.

There is no merit in the contention that the contract is void under the statute of frauds. Section 941, Rev. Laws 1910, provides, in substance, that a contract for the sale of personal property exceeding $50 in value cannot be enforced unless it is in writing and signed by the parties to be charged. The words "the party to be charged" have been generally defined to mean the party against whom the contract is sought to be enforced. 20 Cyc. 272, and cases cited. The defendant, being the vendor, is the party to be charged, and its contract was in writing and is enforceable. Vassault v. Edwards, 43 Cal. 458; Rutenbery v. Main et al., 47 Cal. 213; Cavanaugh v. Casselman, 88 Cal. 543, 2 Pac. 515; Scott v. Glenn, 98 Cal. 168, 32 Pac. 983. A contract is not prohibited by the statute of frauds where evidenced by telegram (20 Cyc. 255; Little v. Daugherty, 11 Colo. 103, 17 Pac. 292; Smith v. Easton, 54 Mo. 138, 39 Am. Rep. 355; Donovan v. Brewing Co., 92 Mo. App. 341; Whaley v. Hinchman, 22 Mo. App, 483); and it is sufficient if addressed to the writer's agent (20 Cyc. 255; Spangler v. Danforth, 65 Ill. 152; Warfield v. Cranberry Co., 63 Iowa, 312, 19 N. W. 224; Bronx Inv. Co. v. Bank, 47 Wash. 566, 92 Pac. 380).

We do not agree with counsel for defendant that defendant was excused from complying with its contract on the ground that plaintiffs had not furnished it with specifications as to the other products to be shipped with the two cars of flour to the plaintiffs. Long before the time of delivery of the two cars the defendant had absolutely refused to ship the two cars of flour, contending that it had not contracted so to do. It would certainly have been a useless thing for plaintiffs to furnish defendant specifications after they had been informed that in no event would the defendant comply with the alleged contract. By its refusal defendant waived its right to have plaintiffs furnish specifications, and is not in a position to urge such failure as a defense to this action.

We have carefully examined the instructions of the court, and find that they fairly and impartially submit the real issues in the case to the jury. We find the requested instructions are either not correct statements of the law of the case, or in so far as they are correct are sufficiently covered by the main charge.

After a thorough consideration of the whole case we are satisfied that there is no reversible error in the record.

The judgment is, therefore, affirmed.

HARRISON, PITCHFORD, JOHNSON, McNEILL, and RAMSEY, JJ., concur.