## FRANKS v. ADOLPH KEMPNER CO.

No. 11639—Opinion Filed June 26, 1923.

Rehearing Denied July 24, 1923.

1. **Brokers—Purchase of Corn — Damages for Broker's Failure to Deliver—Insufficiency of Petition.**

Where plaintiff employed an agent doing business as a dealer on the Chicago Board of Trade to purchase corn for future delivery, and where the agent before accepting such employment informed the plaintiff that while future delivery was contemplated he could not insure delivery, in an action by the plaintiff against the agent for damages for failure to deliver, the petition as amended, which discloses that the agent had limited his liability as to a delivery of the corn, held that the petition as amended failed to state a cause of action.

3. **Same.**

Petition as amended examined, and held, that the same failed to state a cause of action against the defendant and in favor of the plaintiff, and that the court did not err in sustaining a general demurrer to such

petition, and in rendering judgment against the plaintiff for the costs of the action.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Kingfisher County; J. C. Robberts, Judge.

Action by Joseph Franks against Adolph Kempner Company, a corporation, for damages for breach of contract. Demurrer to plaintiff's petition as amended sustained. Judgment for defendant for costs, to reverse which this proceeding in error was instituted by petition in error, with transcript of record attached. Affirmed.

Boynton & Reilly, for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

Opinion by PINKHAM, C. This was an action brought in the district court of Kingfisher county, Okla., on the 8th day of June, 1918, by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, praying judgment against the defendant in error for the sum of $1,370, with interest, for damages for breach of contract alleged to have been entered into between plaintiff in error and defendant in error on or about the 2nd day of August, 1917. The parties will be referred to as plaintiff and defendant as they appeared in the court below.

On or about January 3, 1919, the defendant filed its demurrer to the plaintiff's petition, and on February 24, 1919, such demurrer was sustained, to which ruling of the court the plaintiff excepted and obtained leave to amend the petition.

Within the time provided by the court the plaintiff amended his petition, to which petition as amended the defendant filed its demurrer on about April 21, 1919.

On or about July 12, 1920, the said demurrer was sustained by the court, and the plaintiff excepted thereto and elected to stand upon his petition as amended. The court then entered judgment for the defendant for the costs of the action, to all of which the defendant excepted, and then and there in open court gave notice of appeal, which was spread upon the journals and dockets of the trial court.

The plaintiff assigns as error that the court erred in sustaining the demurrer to the petition as amended, and in entering judgment on such demurrer for costs against the plaintiff. The one and only question in this case is: Does the petition with the amendment thereto state a cause of action?

Plaintiff's action is based upon the theory of a breach of contract. The petition alleges among other things that on or immediately before July 30, 1917, the plaintiff applied to one J. W. Fisher, alleged to have been the agent of the defendant, to obtain his services as a broker to purchase for the plaintiff 2,000 bushels of corn, f. o. b. Chicago, to be delivered to plaintiff during the month of December, 1917; that the plaintiff contemplated and that the agent understood that plaintiff wanted an actual delivery of the corn for feeding purposes. The basis of the plaintiff's action is the alleged failure of the defendant to deliver the corn during the month of December.

It appears from the allegations of the petition that before the plaintiff placed any order for the purchase of the corn in question he consulted the agent of the defendant and made known his desires to have the defendant deliver to him during the month of December, 1917, the 2,000 bushels of corn. The agent, it seems, communicated with the defendant, who conducted a broker's business, dealing on the Board of Trade, Chicago, Illinois, and on July 30, 1917, the agent of the defendant wrote the plaintiff the following letter, a copy of which appears in the petition of plaintiff, as follows:

"I received a letter today from company as to delivery of Dec. corn and Sept. oats. They say that it will be no trouble to deliver the same on both contracts, but that the war is likely to cause trouble with the Board of Trade and therefore cannot insure delivery. However, he thinks there will be no trouble to fill contracts, if you so desire."

Plaintiff then alleges, after setting out the above letter:

"Plaintiff alleges that it was by reason of such communication to the plaintiff by the defendant through its authorized agent, who signed the same, that the plaintiff engaged the defendant to purchase some corn."

It further appears from the allegations in the petition that after the receipt of this letter, which specifically informed the plaintiff that while a delivery of the corn was contemplated as plaintiff desired, yet on account of certain conditions prevailing or that might prevail, that delivery could not be insured, the plaintiff placed his order for future delivery; so that it is clear that the plaintiff in placing his order with the defendant for the corn in question to be delivered to him in the month of December, 1917, did so with the full knowledge and notice that a delivery of the corn might not be possible, and it is fair to conclude from the allegations of the petition that as a mat-

ter of fact plaintiff took the chances of the corn being delivered in the month of December, and as a matter of law that the defendant could not be held liable in damages for failure to deliver. In other words the defendant, before any order had been placed with it by the plaintiff, took the precaution to limit its liability by definitely informing the plaintiff in writing that it could not insure the delivery of the corn, and with that distinct understanding the plaintiff contracted with the defendant for the purchase of the corn.

If in this case the defendant had insured delivery and then failed to deliver, and the plaintiff has suffered a loss occasioned by such failure, there would doubtless be liability; but where the defendant, in advance of the order, positively stated in a communication directed to the plaintiff, that it might not be able to make delivery, we think it clear that the plaintiff could not, under such a state of facts, maintain an action for damages upon defendant's failure to deliver the corn in question. The allegation of the petition with reference to the communication is that: "It was by reason of such communication to the plaintiff * * * that the plaintiff engaged the defendant to purchase some corn."

It is further alleged in the petition that defendant, on December 10, 1917, wrote its agent Fisher for plaintiff's information a letter, which was delivered to plaintiff, as follows:

"Adolph Kempner, President; Jas. K. Riordan, V.-Pres. & Treas.

"Adolph Kempner Company.
"Capitol $100,000
"Grain and Provisions
"Seeds and Mill Stuffs.
"Cable Address, Universal Grain Code,
"Adkemp, International Code Robinson
Cipher.
"80-81 Board of Trade, Chicago, Dec. 10, 1917.

"Mr. Jas. Franks,
"Hennessey, Okla.
"Dear Sir:

"We have your letter of the 7th instant, and in reply will say that if you thought at the time you bought this corn with us that you could insist on the delivery, you had the wrong impression.

"If we remember correctly, Dr. Fisher wrote us during the latter part of July that you wanted to buy some Dec. corn with the idea of having the same shipped, and we wrote Dr. Fisher on July 30, which was before we bought the corn for you, the following: ' We note what you say about Franks wanting to buy 4,000 Dec. corn if we can

deliver. Now of course, you understand that we don't deliver anything. If we buy this corn, we will have to wait until the other fellow delivers it and then of course, we will ship it on to Mr. Franks if he wants it. Have already explained to you about this business and the way purchases are made here.' We meant by this, that, under the rules of the Chicago Board of Trade, which were in force at the time you bought the corn, while delivery was contemplated, it was not guaranteed and the rules of the Chicago Board of Trade in existence at the time, did not guarantee delivery. Our rules at that time specifically stated that in case any property contract for future delivery is not delivered at the maturity of the contract, the seller shall have the right to make settlement on the same.

"We are sorry that you have received the wrong impression and trust that the seller from whom we have this corn bought will make delivery on his December contract, but if he finds it impossible to do so, settlement will have to be made in accordance with the rules of the Chicago Board of Trade.

"Yours very truly,
"Adolph Kempner Company,
"By Adolph Kempner, Pres."

In the above letter set out in plaintiff's petition, plaintiff again was advised of the situation and informed that if the corn was not delivered by the real seller of the same, settlement would have to be made according to the rules of the Board of Trade.

Plaintiff sets out in his petition another letter written by defendant to plaintiff on December 19, 1917, fully advising him of the situation, which letter stated that there was still a possibility that the corn might be delivered, and in the event it should be delivered within the time remaining for delivery, it would be necessary for the plaintiff to place his agent in possession of sufficient funds to pay for the corn upon delivery.

That letter is set out in plaintiff's petition as follows:

"Mr. J. Franks,
"Hennessey, Okla.
"Dear Sir:

" In reply to your letter about the 2,000 Dec. corn which we are long for your account will say, that this corn was bought under the rules and regulations of the Chicago Board of Trade and any amendments made by its board of directors. That is the way all our confirmations read and that is the custom and rule under which trades are made in this market. We believe, therefore, under the circumstances, that these

trades are subject to settlement according to our rules and any amendments of the same made by the board of directors.

"Of course there is still a possibility that this corn may be delivered to us, the seller having until the last day of December to make delivery. This 2,000 corn is bought at 116½-⅝, which including commissions, amounts to $2,336.25. If you want to accept delivery of this corn in the case the same is delivered it will therefore require $1,936.25 in addition to the $400.00 which is to your credit here, and you will please send us a cashier's check for the amount so that in case the corn is delivered, the money is here to pay for the same.

"Yours very truly,

"Adolph Kempner Company,
"By Adolph Kempner, Pres."

After the receipt of the above letter by the plaintiff, the petition alleges that plaintiff procured a signed statement and letter of credit and forwarded the same to the defendant.

This letter of credit was not the equivalent of a "cashier's check," and therefore not an acceptance of the terms offered by the defendant; in other words the plaintiff admits that he did not place funds in the hands of his agent to pay for the delivery of the corn in the event delivery was made, as the defendant required him to do.

It clearly appears from other allegations of the petition that sometime late in the month of December, the defendant not having been able to deliver the corn, a settlement was made and there was returned to plaintiff $400 which he had paid the defendant at the time he placed his order, and also the additional sum of $223.75; in other words, the petition admitted that the defendant did make a settlement with the seller, and that he received the proceeds of such settlement, which was occasioned by the rise in the price of corn. The petition does not disclose the settlement was made, but it must, we think, be assumed that it was made under and in conformity to the established rules of the Chicago Board of Trade.

No authorities are cited in the brief of either plaintiff or defendant directly applicable to the question involved herein Plaintiff's council say, in their brief, that, "Our own court has few cases which will help us." They cite the cases of Weleetka L. & W. Co. v. Burleson, 42 Okla. 748, 142 Pac. 1029, and Kingfisher Mill & Elevator Co. v. Westbrook, 79 Okla. 188, 192 Pac. 209. We are unable to find anything in those cases applicable to the case at bar.

We no not deem it necessary to set out the many other allegations of the petition, in view of the fact that the gist of the plaintiff's action is the failure of the defendant to deliver the corn in question; and when the petition discloses, as it does, that the defendant at no time ever agreed to deliver the corn, but explicitly and repeatedly warned the plaintiff that it could not insure delivery, no amount of allegations in the petition, or argument in the brief, however plausible, can eliminate the condition upon which the defendant agreed to act as the agent of the plaintiff in the purchase of corn for future delivery.

The claim of plaintiff for damages in the amount of the difference in the price of corn in August, when the defendant purchased it on the Chicago Board of Trade, and the price of corn in December, has for its foundation the fact that the defendant failed to deliver the corn.

But when the petition discloses, as it does, that the defendant, in contracting to act as the agent of plaintiff, expressly declined to become liable for the failure to deliver the corn, there was nothing for plaintiff's claim to rest upon.

A careful examination of plaintiff's petition shows that he employed an agent whose business it was to buy and sell grain on the Chicago Board of Trade, "a great market where is transacted a large part of the grain and provision business of the world." Board of Trade of the City of Chicago v. Christie Grain & Stock Company, 198 U. S. 236, 49 L. Ed. 1031.

The acceptance of the plaintiff's order, wired to him from Chicago, is set out in the petition as follows:

"Chicago, Illinois.
"August 2nd, 1917.

"Mr. J. A. Franks,
"Oklahoma City, Okla.

"Bot 2 Dec. 116½ split.
"Kempner."

And the several letters that plaintiff received from the defendant, informing him of the rules of the Chicago Board of Trade, are sufficient evidence of the fact that plaintiff knew that he was dealing through an agent, on the Chicago grain market, and that his dealings on that market through a grain broker would be governed by the rules and regulations of the Chicago Board of Trade, where his corn was bought. Bailey v. Bensley, 87 Ill. 556.

Keeping in mind, as we must, that the defendant at no time ever insured the de-

livery of the corn in question to the plaintiff, but on the contrary, both before and after the plaintiff employed the defendant to purchase the corn for future delivery, clearly explained in written communications that it could not guarantee delivery, which communications are set out in plaintiff's petition, and which constitute the basis of his cause of action, and that the transaction was finally settled, although contrary to the expectations of the plaintiff, we are clearly of the opinion that the demurrer was properly sustained.

We think the ruling of the court in sustaining the defendant's demurrer to the plaintiff's petition as amended, and the judgment of the court that defendant recover the costs of the action should be affirmed.

By the Court: It is so ordered.