## ROXOLINE PETROLEUM CO. v. WILSON et al.

No. 15879—Opinion Filed Feb. 2, 1926.

Rehearing Denied Feb. 15, 1927.

**1. Contracts—Breach Justifying Forfeiture —Waiver.**

Where the breach of a contract has been sufficient to cause a forfeiture, a waiver or acquiescence in the breach, by the party entitled thereto, will preclude the enforcement of a forfeiture.

**2. Creditors' Suit—When Action Against Third Party Maintainable.**

A suit by judgment creditor to subject property of the judgment debtor in the hands of a third party to the satisfaction of the judgment can be maintained only where the judgment debtor has an actionable demand.

**3. Same—Action by Creditor for Specific Performance—Defenses.**

Where the judgment debtor has a cause of action for specific performance of a contract, sought to be enforced in such suit by the judgment creditor, and the party against whom specific performance is sought has a cause of action against the judgment debtor for money advanced in carrying out the contract, but such cause of action is not pleaded, evidence of such indebtedness is not admissible either as a defense, counterclaim, or set-off.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by Jack Wilson, Elizabeth Wilson, A. L. Hawk, Mary Hawk, J. M. Fairchild, C. M. Fairchild and Blanch J. Burns, against E. Talbert and Lester B. Gum, defendants, and Roxoline Petroleum Company, interpleader. Judgment for plaintiffs, and interpleader appeals. Affirmed in part and reversed in part, with directions.

Ross & Thurman, for plaintiffs in error.

Hummer & Foster and R. E. Simpson, for defendants in error.

Opinion by RAY, C. This suit was commenced by judgment creditors of the J. G. & O. Drilling & Leasing Company, a corporation, against E. Talbert and Lester B. Gum, to subject an undivided one-half interest in and to 17½ acres of land in Okmulgee county, and one-half of the oil produced therefrom, to the satisfaction of plaintiffs' judgment against the J. G. & O. Drilling & Leasing Company, upon the ground that the judgment debtor was insolvent and had assigned an undivided one-half interest to the defendant E. Talbert for the purpose of defrauding its creditors. No question is argued here as to the sufficiency of the petition. The defendant E. Talbert answered by general and specific denial. It being made to appear that the defendant Lester B. Gum held the legal title to the land for the Roxoline Petroleum Company, a corporation, of which he was president, the Roxoline Petroleum Company was permitted to intervene in the action, and the case was dismissed as to the defendant Lester B. Gum. The intervener, Roxoline Petroleum Company, answered the petition by general and specific denial, and especially pleaded that it owned the equitable title to the land, and denied that the J. G. & O. Drilling & Leasing Company had ever acquired or held any right, title or interest therein.

The trial court found that the J. G. & O. Drilling & Leasing Company had an interest in the land in question held in the name of the defendant E. Talbert, who was merely trustee for the J. G. & O. Drilling & Leasing Company, and adjudged that its interest be sold and applied to the satisfaction of the plaintiffs' judgment in the sum of $3,175 and interest; that the J. G. & O. Drilling & Leasing Company acquired its interest in the land and the oil produced therefrom, by drilling a producing oil well on the land under a drilling contract, and further found that the Roxoline Petroleum Company advanced certain moneys for payment of the expenses of drilling the well, but that the amount of such advancement was not disclosed by the evidence, and that the J. G. & O. Drilling & Leasing Company's undivided one-half interest was subject to a lien for such advancements as were made by the Roxoline Petroleum Company for the drilling of the well. The amount of such advancements not being disclosed by the evidence, it was adjudged that the one-half interest of the drilling company and E. Talbert be sold subject to the lien of the Roxoline Petroleum Company to the extent of the money advanced, the amount of which

was undisclosed. The Roxoline Petroleum Company has appealed, and the judgment creditors have filed their cross-petition in error.

The evidence shows that on the 11th day of September, 1922, a written contract was entered into between Lester B. Gum for the Roxoline Petroleum Company and the J. G. & O. Drilling & Leasing Company, a corporation, by its president, James H. Topp, wherein it was agreed that the J. G. & O. Drilling & Leasing Company was to sink an oil well on the land to a depth of 2,250 feet unless oil or gas was found in paying quantities at a lesser depth, and that if a paying and producing well was saved and shut in the Roxoline Petroleum Company would convey to the J. G. & O. Drilling & Leasing Company, in payment for the drilling of such well, a good title to a one-half interest in the land with no outstanding claims of any kind against the land or lease. The Roxoline Petroleum Company was to erect the derrick and furnish certain second-hand casings and pay one-half the cost of shooting the well. The J. G. & O. Drilling & Leasing Company was to pay any and all expenses of drilling other than above stated, the well to be commenced within 30 days from the execution of the contract.

At the time the contract was entered into, it was orally agreed that if the stockholders of the J. G. & O. Drilling & Leasing Company should refuse to advance the money for drilling the well, J. H. Topp, its president, or E. Talbert, daughter of James H. Topp. and assistant secretary and treasurer of the drilling company, would undertake to carry out the contract. Sometime later Mr. Topp notified Mr. Gum that the stockholders refused to advance the money necessary to drill the well, and that E. Talbert would undertake to carry out the contract. It was then agreed by Mr. Gum and E. Talbert that she would carry out the contract, and Mr. Gum entered a notation on his copy of the contract to that effect. Pursuant to that agreement E. Talbert moved the drilling outfit and tools of the J. G. & O. Drilling & Leasing Company on the lease and sunk the well, under the direction and management of J. H. Topp, president of the J. G. & O. Drilling & Leasing Company, to a depth of a few hundred feet, when she notified Mr. Gum that the money she had expected to receive had not been received, and she was unable to pay for the labor and other expenses on the well, and asked that he or the Roxoline Petroleum Company advance to her the money, which was agreed to. Thereupon the Roxoline Petroleum Company

paid all the outstanding claims for labor and material furnished in drilling the well to that depth, and placed its superintendent in control of the drilling, and paid all of the expenses of drilling the well, which was a producing well. Neither E. Talbert nor the J. G. & O. Drilling & Leasing Company ever repaid to the Roxoline Company the amount so advanced for drilling the well, or any part of it. The Roxoline Petroleum Company drilled two other wells, one of which was a producing well and the other a dry hole.

The judgment has become final as to E. Talbert, she not having appealed. By reason of the finding of the trial court the parties here assume that whatever interest the defendant E. Talbert may have had in the premises was the property of the J. G. & O. Drilling & Leasing Company.

The parties will be referred to as the Roxoline Company, the judgment creditors, and the drilling company. No other interests are involved in this appeal.

The parties are agreed that the judgment creditors have no greater right against the Roxoline Company than the drilling company had at the time the judgment was entered, and that a judgment creditor's claim to the assets can be sustained only where the judgment debtor has an actionable demand. This being conceded, the first question for answer is, Did the drilling company (who, under the finding of the trial court, owned whatever interest E. Talbert had) have a cause of action against the Roxoline Company?

It may here be observed that the contract which provided that the obligations assumed by E. Talbert under the contract, with the consent of the Roxoline Company, was to drill one well only, and whatever interest, i any, she or the drilling company acquired was fixed by the completion of the initial well, and such interest cannot be affected by the Roxoline Company drilling two other wells in the absence of some agreement between them.

The Roxoline Company contends that the drilling company never acquired either a legal or an equitable interest in the land which it could, at any time from the day of the contract to the time of the trial, have recovered, for the following reasons: (a) The contract having been executed and delivered conditionally, was not a binding obligation on either party until approved by the stockholders and directors of the drilling company. (b) James H. Topp, president of the drilling company, having noti-

ned the Roxoline Company that the stockholders and directors of his company refused to approve the contract or advance the necessary funds to drill the well, the contract should be abrogated and abandoned and no rights could accrue under it. (c) The drilling company never agreed to perform, performed or offered to perform, any of the conditions of the contract. (d) The conditions of the contract to be performed by the drilling company were never performed by anybody. (e) The contract, if ever a valid obligation, was breached by the drilling company, and the subsequent oral agreement between Lester B. Gum and E. Talbert was breached by the latter before the judgment in favor of the plaintiff was entered and before the plaintiffs asserted any claim against the land.

(a, b, c) We think, in view of the finding of the trial court, the correctness of which is not questioned, that E. Talbert, in assuming the obligation of the contract, was acting as trustee for the drilling company, and that whatever right or interest she acquired was the property of the drilling company, and any and all defects in the execution of the contract, or any abandonment or breach of the contract by the drilling company prior to the time that E. Talbert, by agreement of the parties, assumed the obligations and undertook to carry out the contract, was waived by the Roxoline Company. The rule is as stated in Elliott on Contracts, vol. 3, sec. 2050:

"A breach of a contract may be waived by the party entitled to raise the question, and where this is done the breach does not operate as a discharge. * * * And where the breach has been sufficient to cause a forfeiture, a waiver or acquiescence in the breach by the party entitled thereto will preclude the enforcement of the forfeiture. Forfeitures are not favored in law and a waiver of such forfeiture once made may not be recalled."

(d, e) Was the contract breached after E. Talbert, by agreement of the parties, assumed its obligations? The only testimony touching upon the question was that of Lester B. Gum, president of the Roxoline Company, who made the original contract, and also the oral agreement with E. Talbert. His testimony was that after E. Talbert had drilled the well to a depth of a few hundred feet with the drilling company's drilling outfit, superintended by Mr. Topp, her father, and president of the drilling company, she notified him that she had failed to get the money which she expected to use in drilling the well and was unable to pay the workmen and other expenses of drilling,

and asked that the Roxoline Company advance to her money to pay such bills and continue the drilling; that the Roxoline Company then paid all of the bills outstanding, put its superintendent in charge of drilling, and paid all expenses of drilling the well, and had never been repaid for the amount of money so advanced or any part of it. He further testified that it was subsequently orally agreed that E. Talbert should have an interest in the property proportionate to the amount of money repaid by her; but that she had never repaid any part of it.

This evidence does not show a forfeiture of the contract. It only shows an indebtedness due from the drilling company to the Roxoline Company for money advanced. A producing well, such as contemplated by the contract, was completed and accepted by the Roxoline Company. In accepting the completed producing well, it accepted the benefits of the drilling company's drilling outfit, the services of E. Talbert and her father, president of the drilling company, to the drilling of the well to a depth of a few hundred feet, the exact depth not being disclosed by the evidence.

The general rule is that where a contract has been partially executed and one of the parties has derived substantial benefits, or has imposed upon the other material losses through his partial performance of the agreement, the one receiving the benefits, or imposing the loss upon the other, cannot rescind the contract on account of the failure of the other to complete the performance, and his only remedy is compensation in damages for the breach. Kauffman v. Reader, 108 Fed. 171.

In the case of Limerick v. Lee, 17 Okla. 170, 87 Pac. 859, this court quoted with approval from Field on Damages, 327, as follows:

"The doctrine now generally recognized in case of part performance of a contract for personal service is that if the employer accepts the benefit of what has been done, whether voluntarily or from the necessities of the case, the employe may recover according to contract price for what has been done; or, where he is to receive a fixed sum for the whole work, then, in the proportion which the work done bears to the whole work; or, where there is no price fixed, then upon a quantum meruit; from which, however, there must be deducted whatever damages may have resulted to the employer from the failure to fully perform the contract by the employe."

In 13 Corpus Juris 670, the rule is stated as follows:

'An action may be brought on the contract where part performance has been accepted and further performance waived, subject to the right of the other party to recover damages for the faulty workmanship, and for his own consequent loss, and the right to deduction for any defectiveness in the work."

The case of Davidson v. Gaskill, 32 Okla. 40, 121 Pac. 649, cited by counsel for the Roxoline Company, is not in point. In that case the entire contract was not performed, the breach was not waived, and the defendant sought to excuse the performance by saying he was prevented by sickness. In the instant case the breach was waived, the benefits accepted, and the well completed by the Roxoline Company advancing the money for its completion. Neither is the case of Clark v. Board of County Commissioners, Osage County, 62 Okla. 7. 161 Pac. 791, applicable. In that case suit was for the contract price of the construction of a courthouse and jail. The buildings had not been completed, and there was no proof of the quantum meruit value of the work done by the contractor.

In the case of Snyder v. Noss, 99 Okla. 142, 226 Pac. 319, the plaintiff sought to recover for a completed well alleged to have been drilled according to the contract. The well, which proved to be a dry hole, was sunk to a depth of 3,000 feet, as required by the contract, but the contract also provided that a certain sized casing should be used so that defendant could sink the well to a depth of 3,600 feet, if he so desired. A different casing had been used which rendered it impossible for the defendant to reach the 3,600-feet depth. He refused to accept the well upon the ground that it was not in accordance with the contract. No such question is involved here.

This being an action by the judgment creditors in the nature of a creditor's bill, to subject the drilling company's interest in the land to the payment of their judgment, and the judgment creditors having no greater interest than the drilling company had at the time the action was commenced, the question then is, Did the drilling company have a cause of action against the Roxoline Company for specific performance? This question must be answered in the affirmative. The Roxoline Company's right to forfeit the contract was waived. The benefits arising from the services of the drilling company, and the use of the tools and drilling outfit of the drilling company, were received and accepted by the Roxoline Company. The well was completed in a satisfactory manner, was a producing well, and was accepted by the Roxoline Company. The completion of the one well was all the drilling company, by its contract, undertook to do. When the well was completed and accepted by the Roxoline Company, the drilling company had an equitable interest in the land and was entitled to a deed as provided by the contract. Of course, the Roxoline Company had a cause of action against E. Talbert or the drilling company, or both, for the amount advanced for drilling the well, and, no doubt, the right to a lien on the land in its possession in the absence of any intervening adverse right. But such right of action could not operate to deprive the drilling company of its right of action for specific performance. To so hold would be to say as a matter of law, that one-half interest in the land could in no event be of greater value than the cost of drilling the initial well. The value of oil lands is not determined by the cost of drilling the initial well, or any other well or wells, but by the production or prospective production.

We therefore conclude that the court did not err in holding that the drilling company had an interest in the land, and that such interest could be subjected to the payment of the judgment against the drilling company.

The next question to be decided arises upon the cross-petition of the judgment creditors. Did the court err in holding that the Roxoline Company had a lien on the drilling company's interest in the land by reason of the money advanced in payment for the drilling? The contention of the judgment creditors is that such finding was outside of the issues and not sustained by any competent evidence.

The Roxoline Company, by its answer, admitted that Lester B. Gum held the legal title to the land for its benefit, and that it was the equitable owner. It admitted the execution of the drilling contract, but alleged that it never went in force or effect; that there was never any acceptance by the drilling company and that the drilling company never at any time performed the conditions or any part of them, or offered to do so; that the contract was extinguished and abandoned; that the drilling company never at any time acquired any interest in the subject-matter of the contract, and generally and specifically denied all of the material allegations of the plaintiff's petition. By its answer the Roxoline Company did not disclose that money had been advanced for drilling the well, or claim any right, interest, or lien by reason of such advancement. The defense disclosed by the answer was that the drilling company had forfeited the

contract. While it is made to appear, by the evidence offered in behalf of the Roxoline Company, that its superintendent was in charge of the drilling from the time the first money was advanced, and accurate books were kept of the several items of expenditure in drilling the three wells on the land, the books were not offered in evidence, and no other evidence was offered for the purpose of showing the exact amount of money expended. The superintendent was permitted to approximate the amount of money expended on each well. On his evidence the trial court found that the amount expended by the Roxoline Company was undisclosed, but that the Roxoline Company had a lien to the extent of its undisclosed expenditure and that the land should be sold subject to that lien or undisclosed interest. We think this was error. Proof of the advancement of money to E. Talbert was not a defense to the action. It would not have been a defense in a suit by the drilling company for specific performance. It would have constituted a cause of action against the drilling company, which the Roxoline Company could have pleaded as a counterclaim in an action by the drilling company and had adjudicated in the action, but having depended upon its defense that the drilling company had not complied with the conditions of the contract and had acquired no interest in the land for that reason, and not having pleaded its cause of action as a counterclaim, or as supporting a lien for the amount of money so advanced the finding of the court was clearly outside the issues and cannot be sustained.

The judgment is affirmed except in so far as the Roxoline Company was adjudged to have a lien to the extent of the money advanced to E. Talbert in drilling the well. In that particular the judgment is reversed, and the cause remanded, with directions to enter judgment for the plaintiff in accordance with this opinion.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 609 §645. (2) 15 C. J. p. 1401 §62. (3) 15 C. J. p. 1428 §153 (Anno).