## CANADIAN COAL CO. v. LYNCH.

No. 739. Opinion Filed March 21, 1911.

Rehearing Denied May 9, 1911.

(115 Pac. 466.)

1. BAILMENT—Lease of Improvements—Action for Rent—Evidence. Pleadings and evidence examined, and held not error for the court below to direct a verdict for the plaintiff.

2. CONTRACTS—Construction—Two or More Writings. It is only when two or more writings are executed at the same time and between the same parties and concern the same subject-matter, or when the contracts are not executed at the same

time, but refer to the same subject-matter, and on their face show that they are each executed as a means of carrying out the intent of the other, that they may be construed together.

(Syllabus by the Court.)

*Error from District Court, Tulsa County; Benjamin C. Conner, Special Judge.*

Action by William Lynch against the Canadian Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Geo. S. Ramsey,* and *C. L. Thomas,* for plaintiff in error.

*James S. Davenport* and *Harry Campbell,* for defendant in error.

KANE, J. This was an action commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, for the recovery of certain sums alleged to be due the plaintiff from the defendant as rents according to the terms of a certain written instrument attached to the petition. The petition alleges, in substance, that the plaintiff and defendant entered into said contract, by virtue of which the plaintiff rented to the defendant certain improvements, including a blacksmith shop, scales, etc., used in connection with a coal mining lease defendant held on certain lands near Dawson, Ind. T., and the defendant agreed to pay the plaintiff therefor the sum of $2,000 per annum, including the royalty of 8 cents per ton paid the defendant through the Interior Department; that the defendant had the use of said improvements for the said period of two years; that defendant during said time had paid the plaintiff through the Department of the Interior the sum of $800; that the rental value of said improvements /under said contract fdr the said two years was $4,000, on which amount said defendant is entitled to a credit of $800; that there remains due and unpaid on said contract the sum of $1,200 for the period from July 22, 1904, to July 22, 1905, and the sum of $2,000 for the period from July 22, 1905, to July 22,

1906. The contract sued upon, omitting the formal parts and signatures, is in words and figures as follows:

"Whereas, the said parties of the second part are operating a certain coal mine, located at Dawson, I. T., under lease with the said party of the first part; and whereas, the said parties of the second part are now using certain improvements belonging to party of the first part, in connection with their coal operations aforesaid, and desire the use of said improvements so long as they may operate said mine aforesaid under said lease aforesaid: Now therefore, in consideration of the amounts of money as hereinafter set forth, the said party of the first part has this day and does by these presents lease unto the said party of the second part said improvements aforesaid to be used by the said party of the first part, so long as they continue to operate said mines under said lease aforesaid; said consideration to be based upon the output of coal mined from said mines aforesaid, as follows: Four cents per ton, on all coal mined, if the output does not exceed 16,666 tons, per annum; if parties of the second part mine more per annum, the amount is to be two cents per ton, provided, that the whole amount paid by the said party of the second part shall not be less than $2,000 per annum, including the royalty of eight cents per ton, paid through the Interior Department."

In the first paragraph of its answer the defendant admits the execution of the contract sued upon, and "denies that under and by virtue of the terms, conditions, and stipulations contained in said contract it became, was, or is, indebted to the plaintiff in the sum of $2,000, with interest thereon at the rate of 6 per cent. per annum from July 22, 1906, or in any sum whatever." As an affirmative defense, the answer alleged, in substance, that the contract sued upon was a part of an illegal lease contemporaneously entered into by the parties to this action, which provides for the mining and extraction of coal from a part of the Cherokee Nation, without the knowledge, consent, or approval of the Cherokee Nation, United States, or the Interior Department. Upon a trial to a jury, there was a directed verdict for the plaintiff, which, with interest, amounted to the sum of $3,500, upon which judgment was duly rendered. To reverse that judgment this proceeding in error was commenced.

The first contention of counsel for plaintiff in error is that there is no evidence in the record upon which to sustain the verdict and judgment of the court, for the reason that it was not shown how much coal was mined and abstracted from the mine operated by the defendant; in other words, that there must be evidence in the record to show that the defendant coal company mined and abstracted from said mine more than 16,666 tons of coal for each of the two years the defendant used the leased improvements. The suit was commenced and prosecuted upon the theory that under the contract sued upon the plaintiff was entitled to recover $2,000 per annum, including the royalty of eight cents per ton paid through the Interior Department, irrespective of the quantity of coal mined by the defendant. This theory does not seem to have been seriously questioned by the defendant. It is doubtful if the answer is sufficient to put in issue any of the allegations of the petition. From the answer and the subsequent proceedings, it is quite evident that the defendant relied solely upon its affirmative defense to the claim of plaintiff. But, however that may be, it seems to us that the contract sued upon was properly construed by the plaintiff, in outlining the theory of his case in his petition. He sued for the minimum amount he deemed himself entitled to for the use of the improvements regardless of the amount of coal mined, and upon that theory it was not necessary to introduce evidence tending to show the quantity of coal mined. The evidence offered by the plaintiff was upon the theory above outlined, and upon that theory the allegations of the petition are fully sustaind. All the evidence offered by the defendant was directed toward establishing its affirmative defense, and in no wise contradicts any of the allegations of fact contained in the petition or the evidence offered to support them. The evidence introduced by the defendant shows that the coal mining lease referred to in its answer was executed upon the departmental form prescribed by the Secretary of the Interior, dated July 30, 1904, signed and acknowledged by the plaintiff. Upon its face it seems to be complete in itself, covering different

properties from that mentioned in the contract sued upon, and providing for a different consideration. The contract sued upon on its face purports to be a lease of certain improvements, owned by the plaintiff, to the defendant based upon a consideration entirely distinct from the consideration stated in the lease set up in the answer. Counsel for defendants contend that the improvements leased were of little value, and that therefore the conclusion becomes irresistible that the real consideration for this contract was something other than the use of said improvements; that "it is not shown that the blacksmith shop or the scales or any of the other improvements, whatever they may have been, had any unique value, either as works of art, ancient heirlooms, or historic souvenirs. It is not shown that any of these improvements had any of the attributes of Aladdin's Lamp or Ring, by the mere rubbing of which the coal company could summon to its aid some collossal genii to labor for it and in its behalf, and tear asunder the earth and extract therefrom immense and enormous quantities of coal. Therefore it must appear to any reasonable, unbiased mind, in the absence of evidence of some magical power in these improvements, that the real consideration for this contract was something very different from the use of said improvements." No such extraordinary showing is required. In the absence of fraud, the courts will not inquire into the adequacy of the consideration of contracts between competent parties; it is only when the disparity between the true value of the subject of the contract and the consideration is so great as to shock the conscience that a court will feel justified in inquiring into the adequacy of the consideration, and even then fraud, and not inadequacy, is the true cause for interposition. In the case at bar there is no question as to the competency of the parties, nor is it contended that there was any fraud practiced by any parties to the contract in procuring the exaction of the same. The effect of sustaining the contention of plaintiff in error would be to allow it to contradict the terms of one written instrument by another for the purpose of refining away a contract concerning a valid subject of contract

between the parties, by merging it into another contemporaneous contract between the same parties concerning a subject they were not authorized to contract about, so that finally all that remains is the invalid contract, which of course would be unenforceable. This would not constitute "construing contracts together," as we understand the doctrine.

It is only when two or more writings are executed at the same time and between the same parties and concern ·the same subject-matter, or, when the contracts are not executed at the same time, but refer to the same subject-matter, and on their face show that they were executed as a means of carrying out the intent of the other, that they may be construed together. The contract sued upon was an agreement to pay rental for certain improvements leased, whilst the lease referred to in the answer constituted an agreement to pay royalty for all coal mined under its terms. Clearly these contracts concern entirely different subjects and do not on their face show that they were executed as a means of carrying out the same intent.

After careful examination of the record, we are convinced that there was no reversible error committed below.

The judgment of the court below is affirmed.

TURNER, C. J., and DUNN and HAYES, JJ., concur; WILLIAMS, J., absent and not participating.