## BEAUCHAMP et al. v. TOWN OF HALLETT et al.

No. 15925—Opinion Filed Nov. 3, 1925.

**Injunction — Gas — Construction of Consumer's Contract—Right to Writ to Prevent Cutting off Supply.**

A buying and selling contract for gas at so much per 1,000 cubic feet without specifying a pressure basis will be upheld without requiring a pressure basis in an action for injunctive relief to prevent the gas being cut off for refusal of plaintiff to pay for same estimated on a pressure basis.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by John L. Beauchamp and Fred T. Mason against the Town of Hallett, Okla., et al. Judgment for plaintiffs on conditions that defendants' terms be complied with in the future, and plaintiffs appeal. Reversed.

F. B. Dillard, for plaintiffs in error.

L. V. Orton, for defendants in error.

Opinion by THREADGILL, C. The important question involved in this case is whether or not the trial court was correct in requiring the plaintiff to install a pressure gauge and chart for measuring the gas furnished them by defendant under a contract that does not specify a pressure basis as a prerequisite to injunctive relief to prevent the gas being cut off.

The plaintiffs were interested in drilling and pumping oil wells in the neighborhood of Hallett, in Pawnee county, and defendant was an organized town of about 200 inhabitants. Defendant had a written contract with one O. D. Steen, dated June 12, 1923, by which it had bought the gas from a well owned by said Steen at 11 cents per 1,000 cubic feet measured by the "Standard orifice proportional meter" on the

basis of an 8 ounce pressure. On February 2, 1924, plaintiffs and defendant entered into a written contract in which they stated that defendant had the said contract with O. D. Steen and that the same provided that defendant could sell gas to other parties for other than domestic purposes and said Steen could sell such gas to defendant, and, since plaintiffs desired such gas, defendant would furnish same. Then the point of connection is stated in the contract and the price of gas fixed at 20 cents per 1,000 cubic feet. The meter for measuring the gas and the manner of payments were expressed as follows:

"The parties of the second part to install and maintain a proportional meter at the point above provided, and a representative of the first party and a representative of the second party shall read said meter at noon on the last day of each and every month in which gas is furnished, and the first party shall render to second party a statement of the meter reading together with amount due for the gas furnished up to the time the meter was read, and second party shall pay for the gas consumed during any month on or before the 10th day of the month following."

This is the paragraph out of which the controversy grows. Plaintiffs installed a low pressure proportional meter which had been in use in that neighborhood and was known to defendant, and which had no pressure gauge and chart for reading pressure, but it had a dial for showing the cubic feet of gas used without regard to density. The month of June, 1924, the bill rendered plaintiff showed the following registration of the meter: "Pres. read. 25571300, prev. read. 25347100 cu. ft. used 224200, amt. gas metered $44.84, didn't register $13.80, $58.-64." This account was paid. The bill rendered in August for July showed the following registration of the meter: "Meter read. 26008900, prev. read. 25571300", making amount used 437600. The bill contained the statement that: "This gas furnished at 20 pound pressure. 2.30872 multiple for 20 lb. pressure. 437600. 101028-8672. 20 cents per m. $202.05773440." $202.-05 being amount plaintiffs were to pay instead of $87.52, without the pressure estimate. Plaintiffs refused to pay the bill as rendered, and defendant threatened to cut off the gas, and this action was brought to prevent the gas being cut off.

The issues joined on the correctness of this July bill under the contract. Defendant contends that since the contract with plaintiffs mentions the defendant's contract with O. D. Steen, and the Steen contract provided for so much per 1,000 cubic feet, figured on a basis of 20 pounds pressure, or a pressure basis of 8 ounces above atmospheric pressure, that the gas furnished plaintiffs should be figured in the same way. The plaintiffs contend that since the contract with defendant does not expressly adopt the provision of the Steen contract as to pressure and its language is plain as to the sort of meter they were to install, and same has a dial showing the cubic feet used without regard to density, that their contract is entirely independent of the Steen contract, and capable of being understood apart from it; that the readings of this meter were taken by both parties and the monthly bills rendered by the defendant, according to the plain readings of the meter, without a pressure estimation until this July bill.

The issues were tried to the court October 4, 1924, and, after hearing all the evidence, the court took the view of the defendant and rendered judgment, which was, in effect, in favor of defendant. The court found that the contract in question was silent as to computing the gas upon any pressure basis, and that there should be a pressure basis, established for measuring the gas, and that the pressure basis should be ascertained and construed in connection with the Steen contract, which provided for an 8 ounce pressure basis. The court further found that, since the plaintiffs failed to install a pressure gauge and chart in connection with the meter, it was impossible, from the evidence submitted, to figure the measurement of the gas for the months of July, August, and September, being for the month that brought the case into court, and the two preceding months prior to date of judgment. The court found that, because of such impossibility, plaintiffs are entitled to settle the gas bills for these three months at 20 cents per 1,000 cubic feet according to the net meter readings, and that the plaintiffs should install a pressure gauge within 10 days, and the gas pressure thereafter figured according to such pressure gauge and chart, and paid for accordingly; and that the pressure should be figured on an 8 ounce basis, and that upon plaintiffs having complied with this requirement and the bills paid accordingly, defendant should be enjoined from shutting off and depriving plaintiffs of gas during the life of the contract, and judgment was rendered according to these findings of the court, and plaintiffs bring the case here, insisting that the court committed error in construing the contract as was done, and making it a new contract between the parties, and such as was not

meant or contemplated by them when the contract was made. We have examined the two contracts which were introduced in evidence (however, the Steen contract was objected to by plaintiff), and we cannot see how any of the provisions of the Steen contract would be binding upon the plaintiffs just because it was stated in the preamble of this contract that defendant had a contract with Steen to obtain gas from a certain well owned by him, and further stated that said contract provided that the defendant could sell the gas to other parties. There is nothing here that would form a basis of liability upon either party. There is no other reference to the Steen contract except that the contract should run as long as the Steen contract, with a provision that plaintiffs could terminate the contract at any time. The contract then describes the place where, and the sort of meter to be installed, and the time when it should be read by the parties, and the provisions that "the first party shall render to second party a statement of the meter reading, together with the amount for the gas furnished up to the time the meter was read", are all so plain we cannot see where any construction is necessary.

"It is only when two or more writings are executed at the same time and between the same parties and concern the same subject-matter, or when the contracts are not executed at the same time, and refer to the same subject-matter, and on their face show that they are each executed as a means of carrying out the intent of the other, that they may be construed together." Canadian Coal Co. v. Lynch, 28 Okla. 585, 115 Pac. 466.

See, also, R. C. L. vol. 6, pages 850; Lawson on Contracts (3rd Ed.) p. 517; Bladgen v. Thompson, 23 Ore. 239, 31 Pac. 647; Guerini Stone Co. v. Carlin Construction Co., 240 U. S. 264, 60 L. Ed. 639.

We have read the evidence, and it appears that the parties understood that the provisions in the contract for a proportional meter were complied with in the meter installed by plaintiffs. Both parties read the meter for several months before the July bill was rendered. There was no complaint that it was not properly equipped and installed. The figures on the dial were taken as correct in showing the cubic feet of gas used without any reference to a pressure gauge or an 8 ounce pressure basis provided in the Steen contract. This is the way the parties understood their contract until the bookkeeper suggested that the dial readings showing the cubic feet passing through the meter should be figured according to the rule of Henry W. Westcott for "gases where density changes", by multiplying the net cubic feet as shown by the dial by the multiple 2.30872 to find the amount to be paid for. When the bookkeeper called the town officers' attention to this rule, she was instructed to make out the July bill according to it, and this caused the lawsuit.

The expert witness, O. H. Grimes, who testified in the case, seems to have been very conversant on the subject in controversy. He explains the construction of the meter in question and stated that it was a low pressure proportional meter; that its pressure capacity was not over 50 pounds; that there was no difference in the low pressure and high pressure meters, except the latter have a greater capacity. He said it was common to see the low pressure meter without a gauge and chart, and gave the names of places where the same was being used to measure the gas. He said that in the flow of gas the pressure was rarely uniform, owing to the nature of gas, the attending circumstances, which he explained, and the pressure basis was necessarily arbitrary and a matter of agreement between the contracting parties. This evidence is not disputed except, perhaps, the last statement. Defendant contends that the Westcott rule of 4 ounces above the assumed atmospheric pressure of 14.4 pounds per square inch should be applied where there is no agreement as to pressure. They introduce this rule with its explanation as an exhibit. After explaining the 4-ounce rule as the nominal basis for measuring gas, this exhibit states:

"While the 4-ounce basis is generally accepted when no other basis is stated in a buying and selling agreement, some other basis can be used, and very often is used, particularly when gas is being bought or sold in large volumes in the field."

Conceding that the rule is correct and that it is generally accepted in the gas trade, still its application is to quality, rather than quantity; the cubic foot is the same always, but its density changes according to pressure, and the pressure is a matter of regulation as well as a matter of agreement between the parties.

We are, therefore, of the opinion that the judgment of the court requiring plaintiffs to install the pressure gauge and chart as prerequisite to the injunctive relief asked for by plaintiffs is against the weight of the evidence, and is an invasion of the rights of the parties to contract for themselves. Diederich v. Rose et al. (Ill.) 81

N. E. 1142; Elliott on Contracts, vol. 2, pages, 775, 778, and 782.

The cause should be reversed, with direction to the trial court to set aside its judgment requiring plaintiffs to install a pressure gauge and chart in connection with the meter, and render judgment for plaintiffs as prayed for.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 569, §32; on the general rule as to construing instruments together, see 6 R. C. L. p. 850 et seq.; 2 R. C. L. Supp. p. 227; 4 R. C. L. Supp. p. 446; 5 R. C. L. Supp. p. 373.