## APPLEMAN et al. v. PEPIS.

No. 16271—Opinion Filed April 20, 1926.

### 1. Contracts—Rescission—How Effected.

A rescission of a contract results from a judgment of cancellation, the mutual agreement among the parties to the original contract, or an election by one party to rescind where the other party is estopped by his own conduct to assert the contrary.

### 2. Same—Election to Rescind—Pleading.

A party to a contract must stand on his own rescission and election to rescind, and if he relies on his intended rescission, he must plead the acts and conduct upon which he relies for the rescission.

### 3. Same—Reliance on Other Party's Expressed Intention to Rescind.

A mere expressed intention of one of the parties to a contract to rescind will not relieve the other party from the effects of the contract unless the latter elects to rescind and pleads the acts of the other party which will justify a rescission by the pleader.

### 4. Same—Party Estopped by Expressed Intention to Accept Benefits.

Where a party to a contract pursues a course of action that expresses an intention to be bound by the contract and expresses an intention to enjoy the benefits of the contract, he cannot then escape the burdens of the contract.

**5. Bills and Notes—Unnegotiated Note Payable to Third Party Resulting from Contract—Defenses.**

Where two parties enter into a contract which results in a note being made payable to a third party, the note in the hands of the latter is a nonnegotiable instrument, and a suit by the holder on the note is governed by the law applicable to the conduct and acts between the parties to the contract, upon which the note resulted.

(Syllabus by Williams, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Tulsa County; Edwin E. McNeill, Judge.

Action by A. Pepis against L. Appleman and S. R. Travis, on a promissory note. Judgment for plaintiff, and defendants appeal. Affirmed.

A. K. Swann, for plaintiffs in error.

G. C. Spillers, for defendant in error.

Opinion by WILLIAMS, C. The parties will be referred to as they appeared in the trial court.

Plaintiff for cause of action alleged that the defendant L. Appleman was indebted to the plaintiff on a promissory note in the sum of $2,500, as the principal of said note; that the defendant S. R. Travis, in order to induce the plaintiff to accept said note and to secure the payment thereof, did, contemporaneously with the execution of said note, sign the same as indorser. After the settlement of preliminary pleas the defendants filed their separate answers. Defendant Appleman's answer consists of a general denial; that the note was given at the request of one J. Olson, and for the benefit of said Olson; that said note was made payable at the Exchange National Bank of Tulsa, Okla.; that before maturity of said note this defendant deposited in said bank sufficient funds to pay same, and authorized the bank to pay said note when presented; that defendant notified plaintiff that such deposit had been made; that said plaintiff informed the defendant that he had no interest in said note; that J. Olson was the owner thereof. Defendant by way of cross-petition and prayer for affirmative relief says: That on or about October 15, 1920, this defendant and one Herman Livingston were the owners of a certain interest in an oil and gas mining lease in Kansas, upon which this defendant was drilling a test well; that on or about the last-named date, this defendant entered into an oral agreement with J. Olson to sell and did sell to said Olson a one-eighth undivided interest in said lease for the sum of $5,000,

$2,500 being paid in cash, and the remainder evidenced by note due upon the completion of said well; that the defendant and Herman Livingston, in consideration of such payment, executed and delivered unto said Olson an assignment of an undivided one-eighth interest in said lease; that said assignment was never recorded for the reason that said defendant and said Olson on or about February 6, 1921, entered into a verbal agreement, whereby this defendant was to give to said Olson a note for $2,500 due 30 days after date, and cancel the agreement to pay the $2,500 due from Olson to this defendant, in consideration of which the said Olson would and did deliver to this defendant the said assignment to said lease; that after Olson had delivered said assignment and accepted said note he claimed that said assignment had been obtained by false and fraudulent representations, and on or about the 14th day of February, 1921, repudiated the consideration for the execution of said note and filed a notice of said repudiation in the office of the register of deeds in the county where the said lease is located.

The amended answer of the defendant Travis is substantially identical with that of his codefendant Appleman, except in Travis' answer he alleges that he is an accommodation indorser. To the respective answers of the defendants the plaintiff filed replies denying each and all allegations of new matter contained in said answers. A jury was waived and the case submitted to the court, who after hearing the testimony found for the plaintiff. Motion for new trial was heard and overruled and the defendant brings the case here for review.

Numerous assignments of error are urged by defendants, but only those argued in defendants' brief will be considered in this opinion. The first assignment of error presented by defendants is:

"Under the Negotiable Instrument Law, sec. 7722, C. O. S. 1921, the payee in a promissory note cannot be a holder in due course."

The contention of defendants is correct under the holding in Farmers State Bank v. Mowry, 107 Okla. 275, 232 Pac. 26. The first paragraph of the syllabus is as follows:

"Under the Negotiable Instrument Law, sec. 7722, Comp. Stat. 1921, the payee in a promissory note cannot be a holder in due course."

The second proposition is as follows:

"Under the Negotiable Instrument Law, sec. 7728, Comp. Stat. 1921, in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the

same defense as if it were nonnegotiable."

The contention of the defendants is correct on the second assignment under the plain provisions of the section quoted.

Proposition No. 3:

"In a case where a person is induced or claims to have been induced to make a contract of conveyance by the fraud of the other party, he may, on discovery of the fraud, either affirm the contract and sue for damages or may repudiate the contract and rescind. If the party elects to rescind the contract and demands a return of the property, he cannot thereafter sue upon the contract so rescinded. Any contract may be rescinded by mutual assent of the parties, and when the contract is rescinded either as a matter of right because of fraud or by mutual assent, it has no existence thereafter, and cannot be made the basis of a suit. This applies to negotiable instruments as well as to ordinary contracts, and if the negotiable instrument is not in the hands of a holder in due course the rescission of the contract on which it is based amounts to a discharge and cancellation of the note."

The evidence discloses the fact that L. Appleman and H. Livingston were the owners of an oil and gas lease situated in the state of Kansas, on which the owners were drilling a test well; that Appleman and Livingston entered into an agreement with J. Olson for an assignment of an undivided one-eighth interest in the lease to Olson, Olson paying $2,500 in cash for the assignment, and executing and delivering a promissory note payable to the owners in the sum of $2,500. The assignment was placed in escrow until the completion of the well, at which time Olson was to pay the $2,500 note, and the assignment delivered to Olson. An agreement was subsequently entered into between Appleman, Livingston, and J. Olson, whereby Olson agreed to return and deliver the assignment to the one-eighth interest back to L. Appleman and H. Livingston. The consideration for the redelivery of the assignment to Appleman and Livingston was that Appleman and Livingston would cancel and return the $2,500 note to J. Olson and execute and deliver unto J. Olson a promissory note signed by L. Appleman and indorsed by S. R. Travis for $2,500. In other words, the evidence shows the substance of the agreement to be that Olson was to redeliver the assignment of the one-eighth interest back to Appleman and Livingston for the cancellation of his, Olson's, note and the return of the $2,500 paid to them in cash. The return of the $2,500 in cash was satisfied by the making of a note signed by L. Appleman and indorsed by S. R. Travis to

one A. Pepis, by agreement among the parties. The purpose of making the note to A. Pepis was to cause the payment of the indebtedness to A. Pepis for the satisfaction of a like amount owed by Olson to A. Pepis. It appears, according to a writing later placed of record by J. Olson, in the county where the land was situated upon which Appleman and Livingston held the oil and gas mining lease, that Olson claimed the second transaction was affected by certain misrepresentations and fraudulent statements made by Appleman and Livingston to J. Olson, in reference to the well then being drilled upon said lease, and placed on file to said effect a copy of said assignment of said one-eighth interest from Appleman and Livingston with the following note attached thereto:

### "Notice"

"To All To Whom It May Concern: Take notice that I, J. Olson, a resident of Tulsa, Okla., heretofore, to wit: On the 14th day of October, 1921, received for value, an assignment of an interest in an oil and gas lease, a copy of which is herein set out in full as follows: * * * That after said assignment was made, executed and delivered to me, the same was thereafter obtained from my possession by false and fraudulent misrepresentations, and this is to notify the world that I claim the interest set out in said copy of the assignment herein; that said assignment was duly signed by Herman Livingston and L. Appleman. J. Olson."

Said notice was subscribed and sworn to by J. Olson and was filed for record in the office of the register of deeds where the lease was located, on the 14th day of February, 1921.

This appeal turns on the question as to whether a rescission of the contract has been effected by the conduct and acts of the parties. The rescission of a contract is brought about by mutual agreement among the parties to the original contract, or an election to rescind by one party and conduct upon the part of the other, which acts as an estoppel against the latter to assert rights of property interest in the contract. Where the contract is executed on one side and executory on the other, the former may go into a court of competent jurisdiction with his action against the other parties to cause a rescission or cancellation of the contract for the fraud of the other parties.

An election by one party to rescind the contract does not bind the other unless the latter accepts the offer to rescind. One party may desire to rescind, but the other party may undertake to enforce the contract or sue for damages according to his election.

The instrument which Olson filed in Kansas was nothing more than notice to Appleman and the world that he intended to rescind the contract. The contract was executed on the part of Olson, and it would have required a suit by him against Appleman and Livingston to effect the cancellation, unless the latter accepted the offer of rescission. A suit was filed in the name of Appleman, Livingston, et al., in which it was set forth that they were the owners of the entire interests in the oil and gas lease and prayed that title be quieted in them. Instead of Livingston and Appleman accepting the offer of Olson to rescind they filed a suit in effect to cancel the notice and claims of Olson in the property. This bound Appleman to pay the note to Pepis, as it put the payors of the note in the attitude of refusing to rescind the contract. The answer of Appleman in this case does not accept the offer of rescission made by Olson, nor does it show an intention upon the part of the latter to rescind and restore Olson to the statu quo. It is for Appleman to settle this point. He has not expressed in his answer an intention to take advantage of the offer of Olson to rescind and enter into a mutual agreement with the latter to rescind. Therefore Appleman and Travis are not in a position to escape the payment of the note sued on in this action. It is true that the result here reached is not binding on Olson nor Livingston, but there is no complaint of lack of proper parties in this appeal. The appellants rely on the notice of Olson to rescind as a complete defense in this action. This plea does not go far enough; Appleman must go far enough to show that he accepted the offer of Olson to rescind and agree to the rescission. A party to a contract cannot escape its burdens and reap its benefits by merely showing that the other party has expressed an intention to rescind; it merely leaves the other party in a position where he may rescind, or to enforce the contract or maintain his action for damages for a breach. In this case the contract is executed on the part of Olson, and the latter has merely given indication that he might at a later time commence a suit to relieve him from the contract. The mere notice on the part of Olson that he intended to commence proceedings for the rescission of the contract does not leave Appleman in a position to escape the burdens of the contract and receive its benefits. The position of the appellants would be well taken in this case if they had accepted the offer to rescind as made by Olson. J. Crouch & Son v. Huber et al.,

87 Okla. 83, 209 Pac. 764; Nelson v. Golden, 84 Okla. 29, 202 Pac. 308; Minnehoma Oil Co. et al. v. Florence, 92 Okla. 17, 217 Pac. 443; McCoy v. Stockman, 146 Ind. 668, 46 N. E. 21; Hargadine-McKittrick Dry Goods Co. v. Warden, 151 Mo. 578, 52 S. W. 593; Johnson-Brinkman Co. v. Central State Bank of Kansas City, 116 Mo. 558, 22 S. W. 813, 38 Am. St. Rep. 615; Spurr et al. v. Commercial Union Assur. Co., 40 Minn. 428. 42 N. W. 207.

Proposition No. 4:

"Under the Negotiable Instrument Law, and under the general law of contracts, a surety is discharged if a tender of payment is made, either by the principal or surety, and such tender of payment is refused by the creditor; and it is not necessary in order to release the surety under such circumstances that either the surety or the principal should keep the tender good; it is the refusal of the tender which works the release."

The note sued upon in the instant case contains the following provision:

"The makers, indorsers, sureties, guarantors, and assignors of this note severally waive demand, presentment for payment, protest and notice of protest and of nonpayment."

Section 7740, C. O. S. 1921, provides:

"Presentment Necessary, When. Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

It is to be observed that the section quoted contains the following proviso:

"But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

This proviso contemplates statutory exceptions.

Subdivision 3 of section 7752, C. O. S. 1921, provides when it is unnecessary to present an instrument for payment, and reads as follows: "By waiver of presentment, express or implied."

Section 7781, C. O. S. 1921, is as follows:

"A waiver of protest, whether in the case of a foreign bill of exchange or other negotiable instrument, is deemed to be a waiver not only of a formal protest, but also of presentment and notice of dishonor."

In the case of Engle v. Shepherd, 100

Okla. 200, 229 Pac. 208, the second paragraph of the syllabus is as follows:

"Under sections 7779 and 7781, Comp. Stat. 1921, the indorser of a negotiable instrument may waive presentment provided for in sections 7740, 7741, 7759, 7772, and 7773, Comp. Stat. 1921, by agreeing, after date the same is due, to pay the indebtedness within a definite time."

The fifth proposition of plaintiffs in error is:

"Where an obligation is made payable at a certain place, the tender may be made there and if the debtor is there ready and the creditor does not appear, thus the result is the same as if the actual tender had been made, and it is particularly true, if a note or negotiable instrument is made payable at a particular bank, that the deposit of the money there for the payment of the note amounts to an actual tender of payment, especially if notice thereof is given to the creditor."

The principal and indorser in the note sued upon having waived presentment of the note for payment at the time of maturity, at the place indicated in the note for payment, and there being a sharp conflict in the evidence as to whether any notice was given the payee of said note, that said deposit had been made in said bank, and the court having determined the issues in favor of the plaintiff, and there being competent evidence to sustain such finding, the finding of the trial court will not be disturbed.

For the reasons stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 9 C. J. p. 1271 § 236 (Anno); 13 C. J. p. 602 § 627; p. 623 § 683; anno. 24 A. L. R. 253; 6 R. C. L. p. 942; 4 R. C. L. Supp. p. 453; 5 R. C. L. Supp. p. 381. (2) 13 C. J. p. 738 § 878; 6 R. C. L. p. 932; 2 R. C. L. Supp. p. 247; 5 R. C. L. Supp. p. 380. (3) 13 C. J. p. 601 § 624; p. 738 § 878. (4) 21 C. J. p. 1202 § 205. (5) 8 C. J. p. 391 § 577.