**CONTINENTAL SUPPLY CO. et al. v. LEVY.**

No. 16535—Opinion Filed May 11, 1926.

Rehearing Denied July 13, 1926.

(Syllabus.)

1. **Contracts—Construction with Other Instrument Referred To.**

Where a contract is executed which refers

to and makes the conditions of another instrument a part of it, the two will be construed together as the agreement of the parties.

## 2. Contracts—Construction of Language as a Whole—Intention of Parties.

The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties thereto as expressed therein, and give effect to the same if it can be done consistently with legal principles. In arriving at the intention of the parties to a contract, the language used therein, if it is clear and explicit and does not involve an absurdity, governs in the interpretation. The whole instrument should be read together, giving to the words and terms thereof their ordinary and accepted use and meaning, and, if possible, every part thereof should be made effective, each clause helping to interpret the others.

## 3. Contracts—Requisites to Modify Prior Contract.

One claiming that a contract modifies a prior contract must show that the latter contract is definite and certain as to the terms of modification, and the modification extends only so far as the terms are definite, certain, and intentional.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by H. L. Levy against the Continental Supply Company and Union National Bank. Judgment for plaintiff, and the defendants bring error. Affirmed.

Randolph, Haver & Shirk and H. M. Gray, for plaintiff in error Continental Supply Company.

Poe & Lundy, for plaintiff in error Union National Bank.

O'Meara & Silverman, for defendant in error.

MASON, J. The parties will be referred to herein as they appeared in the trial court.

The defendants were the joint owners of an oil lease and all equipment thereon. On May 7, 1920, one Thomas Green, purporting to act for the defendants, entered into a written contract to sell said property to the plaintiff, Levy. The contract specifically set out the property which was to be sold. After specifying the amount of material on the lease, "including two oilfield boilers," it provided:

"All oil in tanks now upon said leased premises, being approximately about 500 barrels and approximately 800 barrels of oil in the Prairie pipe lines."

Said contract also provided:

"Now, therefore, the party of the first part hereby agrees to sell to the party of the second part all of said oil and gas mining leases, together with all of the personal property located thereon, which is described above, for the sum of $10,000, and the party of the second part agrees to purchase said oil and gas mining leases, together with the personal property above set out located thereon, and to pay therefor the sum of $10,000."

The plaintiff advanced $1,000 of the consideration, which together with a copy of the agreement was deposited in escrow. Thereafter it developed that there was only one boiler on said lease, and, on May 12, 1920, the following contract was entered into between the defendants, as parties of the first part, and Levy, as party of the second part:

"Witnesseth: Whereas on the 7th day of May, 1920, Thomas Green, as agent, entered into an agreement with the second party for the sale of a certain oil and gas mining lease, described as follows:

"All lots three and four less the Missouri and Pacific right of way of section 6, township 26, range 15 east.

"All in Montgomery county, Kansas, as described in the original contract above referred to.

"Now, therefore, the party of the second part, H. L. Levy, agrees to purchase the said lease and all the material now on same for the consideration set out in the former contract, to-wit: $10,000, subject to abstract of title as provided for in said contract of May 7, 1920.

"It is mutually agreed that in the event the said first parties fail to return or to deliver one certain boiler they are to deduct $500 from the original purchase price herein named, making the total sum to be paid by the second party $9,500, the said second party excepting the property with material and fixtures now on said lease with any oil either in tankage or in the pipe line, less the boiler above referred to.

"All other agreements as to title and abstracts as provided for in the aforesaid contract to remain in force and effect."

Thereafter, on July 1, 1920, the defendants executed to Levy an assignment of said oil and gas lease, which contained the following clause:

"Together with all the personal property on said lease and all oil in tanks or in or on the pipe lines of the Prairie Oil & Gas Company produced from said premises. Reference is hereby made to contract of sale dated May 7, 1920, and supplemental contract made May 12, 1920."

Levy paid the consideration of $9,500, and after taking possession of said lease discov-

ered that there was only about 240 barrels of oil in the tanks thereon and that there was no oil in the pipe lines of the Prairie Oil & Gas Company, which belonged to said lease. After making numerous demands on the defendants for said oil or its value, Levy commenced this action to recover its value.

The defendants contended that Thomas Green had no authority to represent them in the execution of the contract of sale dated May 7, 1920, which referred to the 800 barrels of oil in the Prairie pipe lines. The defendants did not deny the execution of the contract of May 12, 1920, but insisted that by its terms the plaintiff was to have only such oil, if any, as was in said pipe line.

Judgment was for the defendants, and the plaintiff appealed, and this court held that it was not necessary to decide whether Green acted with or without authority in the execution of the contract on May 7th, inasmuch as the defendants by entering into the subsequent contracts had adopted the one of May 7th, and the judgment of the trial court was reversed. Levy v. Cont. Supply Co. et al., 101 Okla. 144, 223 Pac. 833.

After the mandate of this court was spread of record in the trial court, the defendants, by permission of the court, amended their answer. By the amendment they sought to reform the supplemental contract so as to make it show that no specific amount of oil in the pipe lines was sold.

The case was tried to the court without a jury, and judgment was rendered for the plaintiff, and the defendants have appealed.

For reversal, it is urged that the trial court erred in overruling the separate demurrers of the defendants to the petition of the plaintiff and to the evidence introduced in support thereof.

No complaint is made by reason of the failure of the trial court to reform the contract of May 12th as prayed for by the defendants. The defendants, however, insist that the supplemental contract of May 12th was a modification of the contract of May 7th, and, inasmuch as the supplemental contract makes no provision for any specific amount of oil in the pipe lines, that the defendants are not liable to the plaintiff.

The only question presented for our determination is the proper construction of these contracts. They relate to the same subject-matter and should therefore be considered and construed together. Section

5045, Comp. Okla. Stat. 1921; Canadian Coal Co. v. Lynch, 28 Okla. 585, 115 Pac. 466; Aetna Life Ins. Co. v. Bradford. 45 Okla. 70, 145 Pac. 316; Brake v. Blain, 49 Okla. 486, 153 Pac. 158; Kelly v. Baughman, 66 Okla. 200, 167 Pac. 80.

The cardinal rule by which we are controlled in interpreting these contracts is to ascertain the intention of the parties thereto as expressed therein and give effect to the same if it can be done consistently with legal principles. Section 5039, Comp. Okla. Stat. 1921; Kee v. Satterfield, 46 Okla. 660, 149 Pac. 243.

In arriving at the intention of the parties to a contract, the language used therein, if it is clear and explicit and does not involve an absurdity, governs its interpretation. Sections 5041, 5042, Comp. Okla. Stat. 1921.

The whole instrument should be read together giving to the words and terms thereof their ordinary and accepted use and meaning, and if possible, every part thereof should be made effective, each clause helping to interpret the others. Sections 5042, 5044, Comp. Okla. Stat. 1921; City of Tecumseh v. Burns, 30 Okla. 503, 120 Pac. 270; K. C. Bridge Co. v. Lindsay Bridge Co., 32 Okla. 31, 121 Pac. 639; Lamont Gas & Oil Co. v. Doop and Frater, 39 Okla. 427, 135 Pac. 392.

In Board of Education of Albuquerque v. American National Bank of Oklahoma City, 294 Fed. 14, the court says:

"One claiming that a contract was intended to modify a prior contract, must show that the later contract was definite and certain in its terms."

Page on Contracts, sec. 2458, announces the rule as follows:

"Acts which are ambiguous in their character, and which are consistent either with the continued existence of the original contract, or with a modification thereof, are not sufficient to establish a modification."

See, also, Northwestern Insurance Co. v. Conn. Fire Ins. Co. (Minn.) 117 N. W. 825; Utley v. Donaldson, 94 U. S. 47, 24 Law Ed. 54.

With these rules and principles in mind we have carefully examined and considered the various contracts involved herein and have reached the conclusion that the supplemental contract of May 12th only undertook to modify the original contract of May 7th in so far as it referred to one boiler; that $500 was agreed upon as its reasonable val-

tie and was to be deducted from the original contract price of $10,000 in case it was not located and returned. It appears from the pleadings and the evidence that the 800 barrels of oil referred to in the contract of May 7th, as being in the Prairie pipe line, was worth approximately $2,800. It would be singular indeed if parties who were so careful in referring to a $500 boiler would waive delivery of or give away such an amount of oil.

The assignment of the lease which was executed on July 1, 1920, contained the following:

"Reference is hereby made to contract of sale dated May 7, 1920, and supplemental contract made May 12, 1920."

This indicates that the parties did not construe the supplemental contract of May 12th as taking the place of the contract of May 7th. It is evident that the parties intended, at all times, to keep the three contracts in existence, except in so far as the second modified the first with reference to one boiler.

We think the construction placed upon these contracts by the trial court was correct and the allegations of the plaintiff's petition were supported by sufficient evidence.

The judgment of the trial court is affirmed.

BRANSON, V. C. J., and LESTER, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 13 C. J. p. 530 §488; 6 R. C. L. p. 857; 2 R. C. L. Supp. p. 231. (2) 13 C. J. p. 521 §482; p. 524 §485; pp. 525, 527, §486; p. 531 §489; 6 R. C. L. pp. 835, 837; 2 R. C. L. Supp. p. 218, 220; 4 R.. C L. Supp. pp. 443, 444; 5 R. C. L. Supp. pp. 371. 372. (3) 13 C. J. p. 590 §605.