## BLACK et al. v. SILVER.

No. 17152.  Opinion Filed Feb. 14, 1928.

Rehearing Denied Feb. 26, 1929.

Rittenhouse, Lee, Webster & Rittenhouse, Cochran & Ellison, and Eldon J. Dick, for plaintiffs in error.

Charles A. Dickson and Roy A. Hockensmith, for defendant in error.

HALL, C. This was an action by Carl C. Silver against E. R. Black and his wife, Lena Black, for the recovery of certain commissions and contractor's fees alleged to have been earned in constructing a residence for the defendant E. R. Black; and also to foreclose a mechanic's lien which plaintiff filed on the property, consisting of several lots and improvements thereon.

The amount claimed as due and unpaid was the sum of $17,861.17. Plaintiff secured a judgment against defendants for the sum of $16,632.87, together with an attorney's fee of $3,000, and a decree foreclosing the mechanic's lien.

The pivotal facts in the case are as follows:

(1) Plaintiff, Silver, was a general house-building contractor, and in the fall of 1919 he and the defendant, Black, entered into written contracts whereby he was to construct for Black two commercial houses, one called the Black Apartment and the other called the Post Office Annex. These contracts were reduced to writing, and in plain and unambiguous language recited that the Black Apartment was to be constructed by Silver for a sum not to exceed $80,000 including eight per cent. of the total cost of construction as contractor's fees or compensation to Silver. The contract further provided that whatever sums or amounts there were in excess of the limitation of $80,000, including the commission, should be deducted from the contractor's fee.

The contract for building the Post Office Annex was the same, except the guaranteed cost was not to exceed $38,245. These buildings were constructed by Silver during the winter and spring of 1919 and 1920. The

actual cost of the Post Office Annex, exclusive of the eight per cent. commission, was $37,476.75. That contract consumed all of plaintiff's commissions or contractor's fee except the sum of $768.25. The Black Apartment, exclusive of plaintiff's commission or contractor's fee, cost the sum of $82,171.48. By reason of the commission on extras or betterments, plaintiff was entitled to a fee of $267 out of the performance of that contract.

(2) On February 28, 1920, before the completion of the Black Apartment and Post Office Annex, plaintiff and defendant entered into an oral contract whereby plaintiff agreed to build what is herein termed the "Black Residence" for defendant, for the sum of $96,108.90. The sum bid, and apparently accepted, was in writing and consisted of a letter from Silver to Black stating the above amount for which he would build the residence, and build it according to plans and specifications prepared by some professional architects. The plans and specifications recited as notice to bidders that the contract would be awarded on a cost-plus basis, allowing the contractor ten per cent. commission and "overhead," the overhead expenses to be filed with the architect monthly. The general provisions with reference to the method of bidding recite that the sum bid was not to mean a guaranteed price, but only an indication of the maximum cost of the work, if building conditions remained as at the time of the bidding.

(3) It is the theory of plaintiff that subsequently to the execution of the written contracts for the erection of the Post Office Annex and Black Apartment, and during the period of the construction of these buildings, that plaintiff and defendant modified these written contracts by an oral agreement, whereby plaintiff was to receive eight per cent. commission as contractor's fee, irrespective of any limitation or maximum cost of the buildings.

(4) It is the theory of the defendants that no such agreement or modification of these contracts was ever made.

(5) It is the theory of the plaintiff that defendant agreed to pay him as compensation under the contract the sum of ten per cent. of the total cost of the construction of the Black residence, and also agreed to pay his "overhead" expenses—whatever that means in this particular case—and by a subsequent oral agreement modified this original oral agreement in that defendant agreed to give plaintiff as additional compensation 25 per cent. of all the actual savings which plaintiff, as contractor, could materialize in constructing the residence building according to the original plans and estimate.

(6) Defendants strenuously deny this, and state that the residence was to be built on the same basis as the contracts for the Post Office Annex and Black Apartment, save and except there was to be no limitation or maximum cost of the residence; that is, defendant Black agreed to pay plaintiff eight per cent. on every item of construction that went into the residence, which included an item of $5,000 for hanging the electric fixtures; the total cost of construction of the building was the sum of $111,680.93.

During the construction of these buildings, which extended over a considerable period of time—the residence was not completed until eighteen and one-half months after work on it was commenced—the defendant Black paid to plaintiff in various items approximately or in round numbers, $14,500. During the construction of the Apartment and the Annex, plaintiff was paid in barter about the sum of $4,000. After that time the remaining amount, at intervals, was paid to plaintiff in cash. Black claims that he has overpaid Silver, and asks for affirmative relief against him in the sum of approximately $5,000.

This case was tried primarily before a referee, who found that the written contracts for the construction of the Post Office Annex and the Black Apartment were modified by a subsequent oral agreement; and the referee allowed the plaintiff on these jobs or enterprises, in accordance with the purported parol agreement, the sums of $2,998.14 and $6,841.48. His finding as to the amount due plaintiff in connection with the contract and savings on the residence was substantially in accordance with the prayer of plaintiff's petition; that is, he allowed plaintiff ten per cent. of the total cost of the building, the sum allowed being $11,168.09; plus a charge for depreciation of the contractor's machinery, which was allowed under the head of "overhead expenses," this item being the sum of $1,600; plus 25 per cent. of the savings on the cost of the building as originally estimated, the amount allowed under this head was the sum of $6,503.55, the total sum being $29,111.24.

Unfortunately, the testimony of the parties to this action cannot be reconciled. Much of the testimony of both Silver and Black is unsatisfactory, which doubtless left the matter to the trial court, as well as leaving the matter with us, to rely, to a considerable extent, upon probabilities and surround-

ing circumstances, and at last, perhaps, to what appears to be the equities in the case, except where their application would contravene some positive law.

The findings of the trial court as to the modification of the written contracts cannot be sustained, for the reason that there is not enough definite, certain and convincing evidence in the record to justify a conclusion that the written contracts were ever modified. The only evidence tending to establish a modification of these contracts was a conversation between Black and Silver regarding some union-labor or open-shop troubles when Silver was objecting to Black's participation with the Chamber of Commerce in an effort to bring about the open shop; and one or two other conversations at a later date when Silver purchased from Black some oil stock and an automobile.

The statements which plaintiff says Black made as evidence of the modification of the written contracts are in substance as follows: With reference to objections on the part of Silver to Black's activities in the general labor controversy, Silver said: "He (Black) wanted to know what difference it made to me when I was making my commissions."

As to what was said with reference to savings—"A. The cost of the job made no difference." As to what Black said with reference to change in commission—"The change in the commission was just as I said." Another conversation is detailed which occurred at another time, but the statements as to Black and Silver modifying the provisions of the written contracts are as equally vague and indefinite.

When parties in the first instance take the precaution to reduce their agreements to writing, especially concerning matters of considerable importance, involving the expenditure of large sums of money or incurring extensive liabilities, it is a strong presumption that any material modification of that agreement, also, will be put in the same or some definite form and susceptible of the same degree of proof as the former agreement. This presumption, however, is not conclusive. But in addition to such a provision as section 5081, C. O. S. 1921, which provides the only methods of modifying a written contract, the proof of the modification of a contract in writing by a subsequent oral agreement must be clear and convincing. The foundation upon which rests written contracts make that rule of evidence imperative. Continental Supply Co. v. Levy, 121 Okla. 132, 247 Pac. 967; Falls v. Carpenter, 21 N. C. 237, 28 Am. Dec. 592; Alexander Hamilton Institute v. Hart, 180 Wis. 90, 192 N. W. 481; Peck v. Stafford Flour Mills Co., 289 Fed. 43.

We fail to see anything in Black's conduct tending to corroborate Silver's claim that the written contracts were modified or rescinded. Under the terms of these contracts, whatever these buildings cost above the contract price, plus the eight per cent. commission, Black would lose. Of course, in such case Silver would lose all his commission. It was material to Black to get labor at as low a price or scale as possible. That would help him, and down to a certain point would help Silver.

The testimony of the witnesses Julian and the witness Archer that they heard Silver protesting to Black about the latter's participating in the general labor controversy, and concerning the Black letter stating a limitation of wage scale for his building, and that Black said, "What difference does it make to you? You are getting your straight commission," does not make the testimony sufficiently positive and certain that these contracts were modified.

It is not clear from the testimony that such agreement, if made, was ever fully executed, but executed only to the extent of the payment or advancement by Black to Silver under these contracts of approximately $4,000. Beyond that it does not appear where or on what particular indebtedness the subsequent payments were applied.

However, as we view the case, we need not pass on the issue as to whether or not the agreement, if made, was such as to render it valid under the provisions of section 5081, Comp. Stat. 1921.

As to the contract for the construction of the residence, without discussing to any great length the reasons for our conclusions, our findings are in accord with that of the court below. This was a contract in parol, and the circumstances, especially the recitals in the plans and specifications as to the commission and overhead expenses, and the testimony of Silver as to the definite subsequent agreement, and his testimony as to rendering special and extra services resulting in minimizing the cost of the construction, indicate that his claims, other than his somewhat erroneous construction of the term "overhead," were within the terms of the agreement between the parties; and as a consideration for this agreement he eliminated a considerable amount of "excess baggage" or what he termed "foremen" and performed that ser-

vice himself. We get from the estimate that the salary or wages of these foremen were included in the original estimate of the cost of construction.

We will say, however, notwithstanding the finding and judgment of the court below, as to the allowance of the extra compensation to plaintiff, based upon a percentage of savings in constructing the building, we approve the finding as to this particular item with some degree of reluctance. Not that this provision was not fairly definitely established as a modification of the original agreement—at least established by the testimony of plaintiff himself, and by some corroborating circumstances,—but rather upon the grounds that generally in the absence of exceptional circumstances or unanticipated difficulties such agreement should be looked on with suspicion, because there is always present the question whether the contract did not bind the party claiming the extra or increased compensation to perform the service without it.

The case being primarily one in equity, we find that pursuant to the contracts of the parties, and a full and complete performance thereof by plaintiff, that as against defendant E. R. Black, plaintiff Carl C. Silver is entitled to compensation in the following sums, to wit: $267.75 for the construction of the building known as the Black Apartment; $768.25 for the building known as the Post Office Annex; $11,168.09 as commission or contractor's fee for constructing the Black residence; plus the sum of $6,503.55, which is 25 per cent. of the savings in the construction of this residence; plus the sum of $1,600 as "overhead" expenses, consisting of depreciation of certain equipment while constructing the residence; the total amount being the sum of $20,307.64. As against the aforesaid sum of $20,307.64 to which plaintiff was entitled, we find that said defendant, E. R. Black, has paid plaintiff on said indebtedness the sum of $14,478.40, leaving a balance due from defendant, E. R. Black, to plaintiff, Carl C. Silver, the sum of $5,831.24. That instead of the sum of $3,000, the sum of $1,000 hereby is allowed plaintiff as his attorney's fee in foreclosing the lien in this action. And with the modifications of the findings and judgment of the court below, as herein and above set forth, the judgment is hereby affirmed.

BENNETT, HERR, DIFFENDAFFER, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 594, §610; p. 779, §984; 6 R. C. L. p. 922; 2 R. C. L. Supp. p. 245; 4 R. C. L. Supp. p. 451; 5 R. C. L. Supp. p. 379; 6 R. C. L. Supp. p. 419. (2) 4 C. J. p. 898, §2868; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 76. See "Appeal and Error," 4 C. J. §2867, p. 897, n. 81; §2868, p. 898, n. 87; §3230, p. 1192, n. 59. "Contracts," 13 C. J. §610, p. 594, n. 44; §623, p. 601, n. 28; §984, p. 779, n. 32; §985, p. 780, n. 36.