William B. OSBORN, Jr., Executor of the Estate of William B. Osborn, Sr., deceased, Plaintiff in Error,

v.

W. G. ROGERS, Defendant in Error.

No. 38884.

Supreme Court of Oklahoma.

Feb. 28, 1961.

Rehearing Denied and Dissenting Opinion Filed May 16, 1961.

Application for Leave to File Second Petition for Rehearing Denied

July 5, 1961.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for plaintiff in error.

Chas. L. Orr, Oklahoma City, for defendant in error.

PER CURIAM.

This action was filed in the District Court of Hughes County July 31, 1958, by William B. Osborn, Jr., Executor of the Estate of William B. Osborn, Sr., against W. G. Rogers to recover $1,269.85, alleged to be due plaintiff under an operating agreement dated May 10, 1956, whereby plaintiff agreed to operate an oil and gas lease in Hughes County, owned one-half by plaintiff and one-fourth by W. G. Rogers and one-fourth by Public Service Company of Tulsa, Oklahoma, and by the terms of such operating agreement W. G. Rogers agreed to pay his proportionate share of the operating expenses incurred by the plaintiff in developing and operating the lease under the agreement of May 10, 1956. Plaintiff alleged that he and defendant had become mining partners and that defendant had failed and refused to pay him the above balance and prayed for a lien foreclosure against the one-fourth interest of the defendant in the lease and for costs and attorney's fee.

The court rendered judgment for plaintiff in the sum of $716.96, plus costs and attorney's fee of $125.00, all declared to be a lien against defendant's interest in the leasehold described. The plaintiff has appealed and the parties will be referred to as they appeared in the trial court, or by name.

The defendant admits in his answer the ownership of the leasehold estate and that he and plaintiff entered into an operating agreement whereby defendant agreed to pay one-fourth of the expenses of drilling and completing wells on the lease and the operation therof.. He also plead a general denial and denied that plaintiff had advanced $1,269.85, or any other sum in operating the lease as to defendant's one-fourth interest. He also denied the correctness of the account and prayed for costs.

The facts giving rise to this lawsuit are substantially as follows:

Plaintiff, a resident of San Antonio, Texas, requested the defendant to meet him at the airport in Dallas on the date of the agreement, with a view of securing defendant's signature to the operating agreement involved. The defendant signed the original and two carbon copies, one of which he retained and plaintiff flew to Tulsa, Oklahoma, to secure the signature of the Public Service Company, the third owner of an interest in the oil and gas lease. The President of Public Service Company declined to sign the agreement as written and took it under advisement until July 27, 1956, when he deleted paragraph 11 and the provisions of paragraphs 12–A and 12–B relating to overhead charges that the operator could make. These deletions were made and initialed on the margin of the contract. Only the copy left by plaintiff with Public Service Company was signed by that company and the copies held by plaintiff and defendant were never signed by the Public Service Company and neither were they altered in any way from the way they appeared when defendant signed.

Plaintiff contends that the trial court erred in holding that the contract of May 10th was modified when Public Service Company struck out paragraphs 11, 12–A and 12–B in the accounting procedure section. He contends that this contract executed by plaintiff and defendant was a binding contract.

While this contract refers to plaintiff, defendant and Public Service Company, the last two as "second party", it is clear that it was intended that each second party was intended to be bound unto· plaintiff individually and severally. This is made very clear by paragraph No. 8,. which is as follows:

"The rights and obligations of the parties hereunder shall be individual and several and not joint nor collective. Each party shall be responsible for his obligations only, and it is understood and agreed that this agreement does not create a partnership or group association between the parties hereto."

In 17 C.J.S. Contracts § 352, the rule is stated as follows:

" * * * The question as to whether promises are several is one of intent * * * and a contract which is plainly meant to be several is not required to be treated as joint because several persons have signed it on one side or the other.

"When a several obligation is entered into by two or more in one instrument, it is the same as though each had executed separate instruments, although they may all be for the same subject matter; and consequently each obligation furnishes a several cause of action. * * * *"

Our attention is called to the fact that the defendant in his answer admitted the execution of this contract and at no time in his answer denied its validity.

The defendant admits in his verified answer the ownership of the lease, a one-fourth interest in himself and a half interest in the plaintiff and that the two of them entered into this operating agreement on May 10, 1956. Therein defendant agreed to pay one-fourth of the cost of drilling, completing and operating expenses of the leasehold. He only denies that plaintiff has not paid out or become liable for the amount sued for, and demands strict proof of such facts. So the

defendant again failed in his answer to plead the contentions offered at the trial. In 17 C.J.S. Contracts § 551, p. 1187, it is said:

"Since at any time before a breach * * * the parties to a written contract may dissolve, waive, discharge, or qualify the contract, or any part thereof, by a new contract, such a new contract may be set up in defense, provided it is specially pleaded. A modification or a rescission of the contract must be specially pleaded if relied on as a defense; * * *"

In Appleman v. Pepis, 117 Okl. 199, 246 P. 225, it was said in the second paragraph of the syllabus that:

"A party to a contract must stand on his own rescission and election to rescind, and if he relies on his intended rescission he must plead the acts and conduct upon which he relies for the rescission."

Again in Independent-Eastern Torpedo Co. v. Price, 208 Okl. 633, 258 P.2d 189, 205, it is said:

"* * * It is necessary to plead defenses which assume or admit the original cause of action alleged, but which are based upon subsequent facts or transactions, which go to qualify or defeat it, and defenses which are analogous to the ancient facts in abatement—in other words—new matter; and an entire failure to plead a defense is not cured by the introduction without objection of evidence in support of it, or by finding in relation thereto. Bancroft's Code Pleading Vol. 1, Sec. 267. * * *"

■ It is well established that a contract in writing can only be changed or modified by a new contract in writing or an executed oral agreement. Our statutes cover this point fully in 15 O.S.1951 § 237, wherein it is said:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

■■ We find no proof that the plaintiff ever agreed to accept any lesser sum from defendant than that agreed upon in the written contract which both signed. One who relies upon a subsequent modifying contract must prove such agreement. Foster Oil Co. v. Rogers, 111 Okl. 103, 238 P. 435. The proof must be clear, positive and convincing. Black v. Siler, 135 Okl. 198, 274 P. 886. While there is some hazy inferences that defendant had concurred in the contract as modified by Public Service Company, it is far from being clear and convincing. There is no proof that defendant ever received a copy of the contract modified by Public Service Company. We think the burden was on defendant to prove that the modified contract had been delivered to him, and it could not take effect until such delivery of a modified contract. We think that under all the facts and circumstances before us the trial court erred in finding that the contract in controversy between the parties was modified.

Since we have concluded that such contract is a valid contract between the two parties to this action, there seems to be no question but that the plaintiff had a right to recover from the defendant his one-fourth share of the expenses and overhead charges incurred and paid by the plaintiff in operating the lease, all under the terms of the contract between the operator of the lease and the defendant who owned one-fourth of the lease and by the terms of said contract, which was signed by plaintiff and defendant prior to any changes and deletions made by Public Service Company before it signed that contract.

We think the court erred in reducing the supervision of $300.00 and in allowing the plaintiff no amount for telephone calls. This reduction was no doubt made on the theory that the contract as modified by the Public Service Company was binding upon the plaintiff instead of the contract sued upon. We also think that the court erred in refusing to allow plaintiff overhead expenses during the time the two producing

wells were shut down. They had been completed and capable of producing in paying quantities.

The trial court reduced the supervision charge of $300.00 to $100.00 and deleted all billings for telephone calls from the account. For the reasons already stated we think this was an error. Plaintiff admits that the charge of $125.00 for outside attorney's fee at a hearing before the Corporation Commission was erroneous and agrees that the amount sued for should be reduced by the amount of this fee, leaving $1,061.73 due the plaintiff. The judgment is modified with directions to render judgment for plaintiff for $1,061.73, plus any amount of interest accrued since date of judgment, costs and attorney's fee accruing in this action. The plaintiff is to have a lien against defendant in the leasehold.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, HALLEY, JOHNSON, and IRWIN, JJ., concur.

JACKSON and BERRY, JJ., dissent.

BERRY, Justice (dissenting).

For reasons hereinafter stated, I am unable to agree with the majority opinion.

As I read and understand the uncontradicted evidence in this case, it is clear that at the time defendant initially executed the "Operating Agreement" in controversy it was agreed and understood that defendant reserved the right to revise the agreement at a later date; that he wished to consult with representatives of Public Service Company before reaching a final decision on the matter of revising the agreement.

Defendant testified that upon William B. Osborn, Sr.'s submitting the agreement to him, he "glanced at it and (he) could see it was—applied to oil operations more than gas operations, which it cost more money to run oil"; that he advised Mr. Osborn that he would "sign it on account of it being a matter of expediency and get the well started before they changed this— they were trying to change the spacing on

us, and subject to revision"; that he "advised them that (he) would—would want to make—discuss the matter since Public Service was the other non-operator along for a quarter interest, along with me as a quarter interest non-operator, which I did at a later date".

The person who took defendant's acknowledgment to the operating agreement testified that "Mr. Rogers, when he glanced at it, said it looked like it may be an oil agreement, but I'll sign it with the understanding we can revise it later"; that at the time defendant signed the agreement "he made the verbal comment that he signed it with the understanding that he reserved the right to make revisions in it at a later date, and Mr. Osborn agreed to that."

By letter, under date of July 27, 1956, Public Service Company advised Mr. Osborn that it had revised the agreement as to overhead; that the revised agreement was enclosed; that "We have discussed the suggestions set out in this letter with Mr. W. G. Rogers by telephone and he informs me that it meets with his approval. I am sure, however, that he did not intend to commit himself until he has had opportunity to consider the matter after reading this letter and getting your reaction regarding same. If you feel that the suggested method of handling the cost of the day to day operation and bookkeeping is equitable and satisfactory, letters from Mr. Osborn and Mr. Rogers stating their approval will be deemed by us to constitute an agreement with respect thereof." In a subsequent letter under date of August 10, 1956, Public Service Company advised Mr. Osborn "After discussing the matter of the changes you desire made in the Operating Agreement, we find we are very much at a loss to understand why provision for overhead charges should be covered in the contract, if those charges are not intended to be made. Yesterday Mr. W. G. Rogers was in the office to discuss this situation and after he examined the Contract and the clauses deleted by us and I explained to

him the changes you desire made, he expressed himself as favoring leaving of the contract in its present condition and said that as soon as he returned to his office, he would get in touch with you and explain his views to you directly."; that "As a practical matter we think the simplest course is to let the contract remain in its present state, unless you and Mr. Rogers agree on changes. We try to be reasonable and are inclined to go along with any situation that we regard as being reasonable."

It is settled law that where a person to whom an offer is made accepts the offer subject to material changes therein or subject to acceptance thereof by a third person, an agreement cannot be said to have been reached because there was not a meeting of the minds of the parties. In order for an agreement to result in said instances, the suggested changes must be accepted by the person making the offer. See 15 O.S.1951, § 71; Kingfisher Mill & Elevator Co. v. Westbrook et al., 79 Okl. 188, 192 P. 209; Lee v. National Refining Co. et al., 181 Okl. 556, 75 P.2d 406; 12 Am.Jur. "Contracts", Sec. 53, p. 543, and 17 C.J.S. Contracts § 43, pp. 381, 384. The first paragraph of the syllabus to the case first above cited reads as follows:

"Where a person offers to do a definite thing, and the party to whom the offer is made accepts conditionally, or introduces a new and material term into the acceptance, his answer constitutes a counter proposal, and there is no agreement; but, when the party to whom the counter proposal is made accepts it, such counter proposal and acceptance constitute a binding contract."

The substance of the trial court's judgment is that the agreement as modified was the agreement that was binding upon all interested parties. In Davidor v. Smith, Okl., 309 P.2d 272, 273, we stated in the syllabus that "In an action of legal cognizance where jury is waived, if there is any competent evidence, or inferences to

be drawn therefrom, reasonably tending to support the findings and judgment of the trial court, such judgment will be affirmed on appeal to this Court." When the findings and judgment of the trial court are measured by the quoted rule, it is apparent to me that the judgment of the trial court should be affirmed.

I respectfully dissent from the majority opinion.